BRY *vs.* WOODROOFF.

APPEAL FROM THE COMMERCIAL COURT FOR THE CITY OF NEW-ORLEANS,
JUDGE WATTS PRESIDING.

Where an act of the legislature creating the office of president of the board
of public works, provides " that the governor as soon as may be, after the
passage of this act, *and every two years thereafter*, shall nominate and
appoint, etc., a president of the board of public works :" *Held*, that the
word *thereafter*, referred to its first antecedent, *to wit*, the *passage of the
act*, and that the *duration* of the office is to be reckoned every *second year*
from the date of the act, and a new appointment made accordingly.

The Hon. Henry Bry, was appointed president of the
board of public works by the governor and senate, to take
effect the 18th April, 1839 ; and at the time designated in
his commission, applied to the Hon. C. Woodrooff, his prede-
cessor, for the archives of the office, and to be admitted to
the full exercise and control of all the duties and functions
thereof.   The latter refused to surrender the office, alleging
that his term was unexpired.

The new president applied to the Honorable the Commer-
cial Court, and took a *mandamus nisi*, on the defendant, to
which he showed cause, but on hearing the parties, the *man-
damus* was made peremptory, and the defendant appealed.

The case is so fully stated and expounded by the learned
judge presiding in the court, *a qua*, that his opinion is given
as containing a full report of it.

" The act to amend an act, entitled an act to incorporate a
board of public works, etc., was approved on the 10th March,
1837.   This act created a *president* of the board of public
works.   The second section reads as follows :

" That the governor, *as soon as may be after the passage of
this act, and every two years thereafter*, shall nominate and
appoint, by and with the advice and consent of the senate, a
president of the board of public works.

" On the 10th, March, 1837, the governor nominated to
the senate, Claudius Crozat, as president of the board of
public works.

"On the 13th March, 1837, being, as appears by the jour-nals, the last day of the session of the senate, the senate informed the governor that they did not approve of the nomination of C. Crozat.

" On the 18th April, 1837, during the recess of the legisla-ture, the governor appointed Clark Woodrooff, as president of the board of public works.

" On 22d January, 1838, the governor submitted to the senate, among the nomination of officers appointed during the recess, Clark Woodrooff, to be president of the board of public works.

" On the 12th March, 1838, the senate confirmed this nomination.

" On 12th March, 1839, the governor submitted to the senate the nomination of Henry Bry, to be president of the board of public works, and 'to go into office on the 18th April, 1839, at which time the commission of the present incumbent will expire.' On the same day the nomination was approved by the senate.

" The petitioner claims the office from the 18th April, 1839, and the defendant contends that his appointment lasts for two years from 12th March, 1838, when his nomination was *confirmed* by the senate.

" Two questions are raised : 1st. When does the biennial term of this office commence ?

" 2d. What was the legality and effect of the appointment made during the recess of the legislature, on the 18th April, 1837?

" In offices for terms of years, it is important that they should have a fixed date of commencement and termination. The want of it as to the various important offices, was remedied by the act, approved 11th February, 1835. 1 *Moreau's Digest*, 19.

" I am of opinion, that by the force and effect of the section of the act creating a president of the board of public works, the date of commencement of the office is from 10th March, 1837. The words are, ' That the governor, as soon as may be after the passage of this act, and every two years *there-*

EASTERN DIST.
*May,* 1839.
─────────
DRY
*vs.*
WOODROOFE.

*after,* shall appoint,' etc.   The word *thereafter,* as it appears to me, refers to the passage of the act, and gives a fixed date for the commencement and termination of this biennial office.

" If this opinion on this point is correct, it is conclusive of the whole case, and the appointment of the first incumbent of the office, terminated on 10th March, 1839; as there is no authority to hold over.

" But as the other point is the one relied on by the parties, I shall proceed to give an opinion in relation to it.

" I am aware that it has been a common opinion, that in order that a governor may have the power of appointment, it is necessary that the vacancy should have occurred since the last session of the legislature.   This opinion, appears to me, to have arisen under an erroneous impression of the meaning of the word ' *happen,*' used in the constitution.

" The words are, ' The governor shall have power to fill up vacancies that *may happen* during the recess of the legislature, by granting commissions which shall expire at the end of the next session.'

" As an evidence how easily the most celebrated philologists may commit gross errors, Dr. Johnson in his definition of the meaning of the preposition '*from,*' says that it sometimes means motion, and gives as an instance, ' Figs come *from* Turkey;' and that it sometimes means rest, and gives as an instance, ' The lamp hangs from the ceiling.'   Horne Tooke detects the fallacy of this reasoning, by showing that in the first question, the idea of motion is implied in the word *comes ;* and in the second question, the idea of rest is implied in the word *hangs,* and that the word from, has no connection with either idea.

" Because the word *happen* is frequently used in connection with *casualty,* it is supposed always to imply a casualty.

" It is evident that this is the source of the mistaken opinion referred to, as it is expressly put on this ground in the decision of the senate of the United States, cited in 3 Story, 411, on the Constitution of the United States.

" But that the word *happen* does not necessarily imply this

idea, is clear from the dictionary of Crabb, the most accu-
rate philologist of our language : ' To happen, chance.'
' To happen, that is, to fall out by a *hap* is to *chance*.   (See
chance, fortune,) as the genus to the species ; whatever
*chances, happens,* but not *vice versa.   Happen* respects all
events, without including any collateral idea ; *chance* com-
prehends, likewise, the idea of the cause and order of events :
whatever comes to pass *happens,* whether regularly in the
course of things, or particularly and out of the order ; what-
ever *chances, happens* altogether without concert, intention,
and often without relation to any other thing.'

" 'Accidents *happen* daily which no human foresight could
prevent : the newspapers contain an account of all that *hap-
pens* in the course of the day or week; listeners and busy
bodies are ready to catch every word that chances to fall in
their hearing.'     See *Crabb's Synonymes,* words, *happen,
chance.*

" The inference is, that whenever or from whatever cause a
vacancy exists, it is the duty and the power of the executive
to fill it.    It is enough that the vacancy *exists,* to confer this
power and right to appoint during the recess. (

" And the second section of the act of 5th September,
1812, 1 *Moreau's Digest,* 18, is only declaratory of the true
construction of the constitution.    The section is, ' That the
governor be, and he is hereby authorized to fill all vacancies
that may exist during the recess of the legislature, by com-
missions to expire at the end of the next session thereafter.'

" Though the law has an independent effect as to offices
which are filled by joint ballot, or otherwise : the construc-
tion thus given is ably sustained by the opinions of Mr.
Attorney General Wirt, in 1823, and Mr. Attorney General
Taney, in 1832, in the case of Gwynn, which are contained
in Niles' Register for 1832.

" The argument from the danger of the abuse of this
power, and the necessity of its existence, is here ably answered
and proved.    Story, in his 3d volume of Commentaries on
Constitution of the United States, 411, only reports the deci-
sion of the senate, without giving it the sanction of his own
opinion.

" Judge Story's book was published in 1833, and does not notice the opinions of Wirt and Taney, above referred to.

" The appointment of the defendant on the 18th April, 1837, was, therefore, strictly constitutional, and I do not consider that the section of the act of 10th March, 1837, limits the appointment of the president of the board of public works, to the case where it is at once confirmed by the senate.

" The nomination on 12th March, 1838, is in terms a continuation of the appointment of 18th April, 1837.

" In whatever light it is to be considered, there, it appears to me, that the term of office of the defendant is expired, and that the plaintiff is entitled to fill the office in question, though I repeat I am of opinion that the term of this office is from 10th March, 1837, and for every two years thereafter.

" It is, therefore, considered, that a peremptory *mandamus* be issued to the defendant, Clark Woodrooff, commanding him to deliver to the plaintiff, Henry Bry, the office of president of the board of public works, and all the papers, books, documents, plans, etc., thereunto belonging, and that said defendant pay the costs of these proceedings."

The case was submitted to this court by *Mr. Mazureau*, of counsel for the plaintiff.

Hon. C. *Woodrooff*, *in propriâ personâ*, denied the plaintiff's capacity to sue for and claim the office which he seeks, because it has not been constitutionally or legally conferred on him.

2. He admits the existence of the law under which the plaintiff claims to be appointed, and all the material facts alleged, abstractly; but he insists that he was appointed by the governor in the recess of the senate, in the month of April, 1837, *temporarily*, and his commission was to expire at the end of the next session; that in truth and in reality the office had never been filled under the provisions of the act of March, 1837, and could not strictly be said ever to *have*

*become vacant during the recess* of the legislature ; and that the executive appointment, was not expressly warranted by law or the constitution, but grew out of the necessity of the case. His subsequent appointment by the governor and senate in March, 1838, was made for the purpose of confirming any of his acts, which might be deemed illegal during the executive appointment, &c.

3. He contends that he holds the office by an appointment of the governor and senate, on the 12th March, 1838, as evidenced by his commission, and that under the act of the legislature he is entitled to hold the office *two* years from the date of this appointment ; it being the only one that has ever been legally made. The words of the act are, that " as soon as may be after the passage of this act, and every two years thereafter, the governor shall appoint a president of the board of public works, &c, " and these words must be applied to the appointment of the governor and senate, as the only legal one that has been made.

4. This appointment is not a mere sanction given by the senate, of the executive appointment, as is contended for ; but it is a distinct, complete and separate act of the appointing power by the joint action of the executive and one of the branches of the legislative department. An executive appointment is complete by the action of the governor alone. It requires no confirmation, and the commission under it expires at the end of the next session. *Constitution of Louisiana, art. 3, sec.* 10.

5. The plaintiff could not constitutionally receive an appointment to vacate a commission held under a valid and legal appointment ; and the governor and senate have no authority to displace an officer before the official tenure of the office expires. If the plaintiff holds any commission as president of the board of public works, to take effect prior to the 12th March, 1840, it is utterly null and void for want of authority in the appointing power.

*Martin, J.,* delivered the opinion of the court.

EASTERN DIST.
*May,* 1839.

BRY
*vs.*
WOODROOFE.

The defendant is appellant from a judgment ordering a peremptory *mandamus* against him, for the delivery of " the office of president of the board of public works, and all the papers, books, documents, plans, &c., thereunto belonging," to the plaintiff.

The question turns upon the legality of the plaintiff's appointment to the office he claims. It was created by an act of the legislature, approved the 10th of March, 1837, the second section of which directs, " that the governor, as soon as may be after the passage of this act, and every two years thereafter, shall nominate and appoint, by and with the advice and consent of the senate, a president of the board of public works." No appointment, however, took place under this act until after the adjournment of the legislature ; and afterwards, to wit, on the 18th of April, 1837, the governor gave a temporary commission to the defendant. On the 12th March, 1838, his nomination was submitted to the senate and approved, and he received a commission accordingly. On the 12th March, 1839, the plaintiff, with the advice and consent of the senate, was appointed, and his commission expresses that he is " to go into office on the 18th of April, 1839, at which time the commission of the present incumbent will expire." On the 30th April, the defendant having refused to surrender the office, the plaintiff made application for a *mandamus*.

The judge *a quo*, after having heard the parties, ordered a peremptory *mandamus*, and the defendant appealed.

The inferior court was of opinion that the legislature had directed the appointment to be made every second year after the 10th of March, 1837.

It does not appear to us that the court erred. The word " thereafter," in the second section of the act cited, can have reference to two periods only, *viz.*, the date of the act, or that of the first appointment under it.

The commission of the plaintiff assumes, that the date of the first appointment was the 18th of April, 1837. The defendant admits this, but he contends that the office is biennial, and its duration is to be reckoned from the 12th

March, 1838, the date of his second appointment.  The counsel for the plaintiff urges that the defendant's first appointment must be disregarded, as unconstitutional, the governor having filled the vacancy, which did not happen in the recess of the legislature.  Our learned brother of the inferior court has been of opinion that the governor may fill all vacancies that exist in the recess.  In this he thinks himself supported by an act of the legislature passed the 12th September, 1812.  1 *Moreau's Digest*, 18.

This is a question of great importance, and we have been prevented from examining it by the consideration that it is not necessary to be acted upon in the present case.

The legislature has not expressly made the tenure of the office under consideration biennial.  It has said nothing of the tenure, but has spoken only of the appointment, which it has required to be made biennially.  We have therefore to consider, only, whether the appointment is to take place in every second year, on the 10th of March, the day of the date of the act; the 18th of April, the date of the defendant's first commission; or the 12th March, 1838, the date of his second commission.

The judge *a quo* correctly concluded that the duration of the office is to be reckoned from the 10th of March every second year, because this date is a certain one, and any other must be sought by computation, and be liable to variation.  The word "thereafter," in the act, refers to its first antecedent, to wit, the passage of the act.  The judge *a quo* correctly observes, that in offices for terms of years it is important that they should have a fixed date of commencement and termination.  The want of it, as to various important offices, was remedied by the act approved the 11th of February, 1825, making these offices expire on a fixed day periodically, according to their duration.  1 *Moreau's Digest*, 19.

It is, therefore, ordered, adjudged and decreed, that the judgment of the inferior court be affirmed, with costs.