The opinion of the court was delivered by
Spencer, J.
Relator claims from defendant the possession of the *1183 •office of Public Administrator of the parish of Orleans, by virtue of a -commission thereto, issued by Governor Nieholls, on the 3d May, 1878.
Parker claims to hold, under a commission from Governor Kellogg, of date June 10th, 1875, and contends that his tenure does not terminate •until 10th June, 1879.
The act creating the office of Public Administrator was approved March 5th, 1870, and provides that the Governor shall appoint a suitable person as such, etc.
Section 6. “ That the Public Administrator shall hold his office for the term of four years, and until his successor be appointed and duly qualified.”
Section 10 provides, “ That this act shall take effect from and after its passage.”
The first appointment was of one Eoulke, on the 2d April, 1870. Eoulke resigned, and E. T. Parker was appointed, 14th June, 1872, “vice Eoulke, resigned.” On 10th June, 1875, Parker was again appointed, as stated above, and claims that he is entitled to hold for four years from that date, or until 10th June, 1879.
The decision of this cause depends upon the question, When did the term of four years, for which Parker was last commissioned, begin? The defendant contends that it began on the day of his re-appointment, to wit : 10th June, 1875.
Relator contends that it began either on the 5th March, 1874, (being four years after the passage of the act), or on the 2d April, 1874, (four years after the first appointment under the act), and had therefore expired on the 3d May, 1878, the date of relator’s commission.
The object of the statute was most assuredly ihe creation of a public office. It can not be denied that on and after the 5th March, 1870, there existed in the parish of Orleans, as well as in the other parishes of the 'State, the “ office of Public Administrator.” It is equally certain that the Legislature intended to and did fix a term for that office, and that that term was four years. The “ office” commenced its existence on the 5th March, 1870, and in the absence of provision to the contrary, as an incident thereof, “ the term” commenced at the same time that the office did. There is no more reason for saying that the commencement of the term was suspended until there was an appointee, than there is for saying that the existence, the ■commencement of the office itself, was suspended. Neither the existence of the office, nor the running of the term, depended upon the appointment of an occupant, so far as we can gather from the terms of the act. We are of opinion that, in the absence of provision to the contrary, the term begins with the existence of the office — and not with the appointment of an incumbent — otherwise infinite confusion would be introduced in the tenure of public offices. As said by this *1184 Court, in “Bry vs. Woodruff,” 13 La. 563, “in offices for terms of years, it is important they should have a fixed date of commencement and termination” — and we think, that where there is nothing in the act creating the office and its term directing otherwise, we should hold in the interest of public order that the term begins with the going into effect of the act creating the office.
But the defendant’s counsel urge with much earnestness that the act does provide otherwise, because it declares “ that'the Public Administrator shall hold his office for the term of four years, and until his successor is qualified, etc.” We regard this clause as simply fixing the term of the office; and upon examination it will be found that those are the almost invariable words used in the Constitution and Laws of this State for fixing the terms of office. Thus it is said of the Governor, “He shall hold his office for the term of four years.” The same is said of the Secretary of State, the Auditor, the Treasurer, the Attorney General, the Judges, the Sheriffs, and Clerks. Does any body suppose that these provisions entitle one of these officers, who may be appointed in the middle of a term, to hold for a full term ? When the law says that “the Public Administrator shall hold his office for the term of four years” it means precisely what it does when it uses the same words with reference to other officers. It means to fix the “term” of the office, i. e., the longest time it may be occupied without re-appointment; but does by no means imply that every incumbent shall hold it for four years, regardless of the time at which that term began, and of the time he was appointed. The effect of defendant’s argument is to make the term of this office depend upon the mere agreement and consent of the executive and incumbent, instead of making it dependent upon the law. Its duration is at the caprice of these functionaries. Thus, they say that Foulke was appointed 2d April, 1870, and his-term expired with his resignation in June, 1872. That Parker’s first term commenced on the 14th June, 1872, the date of his appointment, and expired 14th June, 1875, the date of his present commission, and the date at which he and the Executive tacitly agreed that the term should end. This is to completely confound the term of that office with Parker’s tenure of it. The latter is within the control of the parties, and may be longer or shorter, according to circumstances ; but the former is not. The term remains invariable, always the same, and is not subject, in its duration, to the wishes or agreements of any persons whomsoever; while the .tenure of an incumbent may always be terminated by his resignation and its acceptance. During one term there may be several tenures, but there can not be several terms in one tenure.
There is no sort of analogy between this case and that of “Kelly vs. Gilly,” 5 A. 534. To make the cases parallel, the act creating this *1185 office should authorize the Governor “ to appoint as many public administrators as he deems necessary;” just as the law provides relative to notaries. Then we could say of public administrators what the Court does in that case of notaries : “ The law does not require the Governor to fill vacancies as to the office of notary public, but to appoint the notaries that may be necessary. * * * The notary appointed “does not fill the unexpired term of his predecessor, but is appointed a notary under the law, and is entitled to hold the office for four years from the date of his appointment.” And why ? Because each notary, in the opinion of that' Court, is appointed to a different, independent office, never before held or occupied by any predecessor — that notaries had no predecessors in the proper and legal sense of that term ; since it is not necessary that one should go out of office before another comes in — the Governor having authority to appoint ad libitum. Their possession of the record® of notaries who may have died or resigned, or whose terms may have expired, was not by virtue of successorship, but by virtue (as said in “Kelly vs. Gilly”) of the direction of the Governor, whose duty as chief executive is “to take care of and preserve the public property and records, where the laws have not otherwise provided.” The whole decision in Kelly vs. Gilly rests upon this fundamental proposition, that there are as many offices as there are notaries, and that there is no succession among them. Can such d proposition be predicated of public administrators ? It is absurd to contend that it can, for there can be but one public administrator at one time. There is but one office, and each incumbent is successor of the one who preceded him.
We hold, therefore, that the first term of the office of public administrator expired on the 5th March, 1874, and that the second term thereof expired on the 5th March, 1878. That Parker’s first appointment on 14th June, 1872, was for the vacancy created by Foulke’s resignation, and was not made to fill what is sometimes called “ an original vacancy,” i. e., one caused by expiration of the term. That his second appointment on June 10th, 1875, was for the residue of the unexpired term commencing 5th March, 1874, and ending 5th March, 1878. That his tenure from 5th March, 1874, to 10th June, 1875, was by virtue of that provision, common to this statute and the general law, authorizing him to holdover until his successor was appointed. That this time, during which he held over, constituted legally no part of the first term of said office, and that the fact that no appointment was made on 5th March, 1874, did not continue the first term of the office beyond that day. These views render it unnecessary to discuss the authorities cited from 9 Wheaton, 734, and the opinions of Attorney Generals Taney, Berrien, and Mason, relative to the effect of the acceptance, by an incumbent, of a new commission before the expiration of his old one; since we hold that Parker’® *1186 first commission, had expired before the second one was issued to him. The judgment appealed from is erroneous, and must be reversed.
It is therefore ordered, adjudged, and decreed that the judgment •of the court a qua be annulled, avoided, and reversed; and it is now ordered, adjudged, and decreed that the relator, Daniel Wilson, be and he is hereby decreed to be the lawful Public Administrator of the parish of Orleans, and as such entitled to hold and exercise the same; and it is further decreed that E. T. Parker unlawfully holds said office, and he (said Parker) is hereby ordered to deliver and turn over to said Wilson said office, together with its books, papers, and archives, and to pay costs of this suit in both courts.