O’NIELL, J.
This is a suit for possession of the office of examiner of state banks, brought under what is called the intrusion into office act. The plaintiff. R. N. Sims was appointed and commissioned by the governor, on the 6th of January, 1915, during a recess of the Senate, to succeed the defendant, whose term of office was supposed to have expired. The latter refuses to surrender the office, contending that his term has not expired, and that in any event he has the right to hold over until the appointment of his successor is confirmed by the Senate.
The plaintiffs contend that the defendant’s term expired either on the 30th of August, 1914, that is, at the expiration of the fourth term of four years from the date the statute creating the office went into effect, or, in the alternative, that it expired on the 28th of December, 1914, the expiration of the fourth term of four years dating from the day on which the first appointee qualified, and that the expiration created a vacancy which the Governor had authority to fill by appointment during a recess of the Senate.
The defendant contends that his term will not expire until the 24th of July, 1916, that is, the expiration of a term of four years from the date of his induction into office under his appointment of July 8, 1912; and, in the alternative, in the event it be held that his term did expire in 1914, he contends that the expiration of his term did not create a vacancy in the office such as the Governor could fill by appointment during a recess of *105 the Senate, because he (defendant) is fulfilling the duties of the office, and has a right to hold over until his successor shall be appointed, and the appointment confirmed by the Senate.
On these issues the case went to trial. The district court decided that the defendant’s term of office expired on the 28th of December, 1914, but that the expiration of the term did not create a vacancy in the office, and that, therefore, the Governor had no authority to make the appointfiient during a recess of the senate. The suit was dismissed; the plaintiffs appealed; and the defendant, in answer to the appeal, prays that the judgment be amended so as to decree that his term of service shall extend to July, 1916.
[1] The office in contest was provided for by article 194 of the Constitution of 1898, viz.:
“Art. 194. There shall.be appointed by the Governor, by and with the advice and consent of the Senate, a state examiner of state banks, who shall be an expert accountant, and who shall make examinations of all state banks at least twice in every year. His term of office shall be four years and the Legislature shall define his duties and fix his compensation.”
The corresponding article of the Constitution of 1913 is precisely the same, except that the officer is there termed an examiner of state banks.
The term of office was thus fixed'at four years, in the Constitution, without declaring when the term should begin; and it was made the duty of the Legislature merely to define the duties of the officer and to fix his compensation.
Article 194 of the Constitution of 1898 was put into effect by Act No. 198 of that year, the first section of which provides:
“That there shall be appointed on and after the passage of this act, by the Governor, by and with the advice and consent of the Senate, an officer, who shall be an expert accountant and familiar with bhnking transactions, and shall be known as the state examiner of state hanks. He shall be commissioner, on taking and filing the necessary oath of office, and shall serve for four years from the date of his induction into office. * * * ”
This statute, therefore, declared that the' 'constitutional four-year term should begin from the date of the officer’s induction into office.
The first appointment of an examiner of state banks was that of Fred G. Freret, whose commission issued on the 16th of December, 1898. He qualified and went into office on the 28th of December, 1898. L. E. Thomas was appointed as the successor of Mr. Freret on the 23d of December, 1902, and qualified on the 31st of that month; the appointment was confirmed by the Senate on the 21st of December, 1903, and he -again filed an oath of office on the 31st of January, 1904. Mr. Thomas resigned, and the present defendant was appointed and commissioned to fill the vacancy on the 18th of August, 1906, and qualified on the 3d of September, 1906. Mr. Young was reappointed on the 31st of December, 1906, to succeed himself, and qualified on the 7th of January, 1907. His second appointment was confirmed by the Senate on the 14th of November, 1907, and he filed a new oath of office on the 24th of February, 1908. He was again appointed by Governor Sanders on the 5th of January, 1911, to succeed himself, his term having expired during a recess of the Senate. Governor Hall, being inducted into office when the Senate convened in 1912, withdrew the appointment made by Governor Sanders, and issued a new commission to Mr. Young. This latter appointment was confirmed by the Senate on the 8th of July, 1912, and he qualified on the 27th of that month.
In the meantime Act No. 112 of 1910, entitled “An act to put into effect article 194 of the Constitution of 1898; to create a state banking department,” etc., made certain changes in the law enacted on the subject by the statute of 1898, but retained and repeated the provision that the state examiner of *107 state banks should “serve for a term of four years from the date of his induction into office.”
The Legislature did not attempt, by the statute of 1910, to abolish the office of state examiner of state banks, which had been created by article 194 of the Constitution of 1898. That article had been put into effect by the statute of 1898, and the constitutional office thus created could not then have been abolished, and a new office created, by another act of the Legislature pretending to give effect to the constitutional provision as if it had not already been put into effect. It is obvious that the Legislature had no such intention. Observing that the term of office would expire on the 28th of December, 1910, the Legislature provided in the statute of that year that the act should go into effect on the 1st of January, 1911, and the repealing clause only repealed “all laws or parts of laws on the same subject contrary to or inconsistent with the provisions of this act.” If Mr. Young had been reappointed, confirmed, and qualified between the 28th of December, 1910, and the 1st of January, 1911, his appointment would have been for the term of four years, as fixed in the article of the Constitution then in effect. To say that the office of state examiner of state banks went out of existence and a new office bearing the same title came into existence when the year changed from 1910 to 1911 would mean that the new office remained vacant until the Governor 'saw fit to make an appointment and the appointee saw fit to qualify. Once having put into effect the article of the Constitution creating the office of examiner of state banks, the Legislature had no authority to abolish the office, nor to alter the term fixed in the Constitution.
The first question to be decided is whether the defendant’s term of service expired on the 28th of December, 1914, or is to continue until July, 1916. I-Iis term did not expire on the 30th of August, 1914; that is, at the end of four terms of four years from the day the statute of 1898 went into effect. The statute expressly declared that the official should “serve for four years from the date of his induction into office.” The plaintiffs contend that, after the beginning of the term was fixed by the induction into office of the first appointee, the succeeding terms were cycles of four years dating from the induction into office of the first appointee. The defendant contends that the language of the statute means that each appointee “shall serve for four years from the date of his induction into office.”
The doctrine relied upon by the plaintiffs is tersely stated in 29 Cyc. 1396, viz.:
“In the case of appointive officers, the beginning of the term of the first appointee determines the limits of the terms of successive appointees; so that one appointed in the middle of the term or because of his holding over is not appointed for longer than the unexpired term.”
As the date of the beginning of the term was not fixed in the article of the Constitution creating the office, if that article had not required legislation to put it into effect, the term of office would have commenced on the day the Constitution went into effect, and each succeeding term, would have commenced on the corresponding day thereafter, in cycles of four years. And if the enabling act had not declared when the four-year term should begin, it would have commenced on the day the statute went into effect. This was decided as early as 1839, with regard to an appointive office styled president of the board of public works, in Bry v. Woodrooff, 13 La. 556. In that case, Mr. Justice Martin, as the organ of the court, said:
“The Legislature has not expressly made the tenure of the office under consideration biennial. It has said nothing of the tenure, but has spoken only of the appointment, which it has required to be made biennially. We have therefore to consider, only, whether the appointment is to *109 take place in every second year, on the 10th of March, the day of the date of the act, or the 18th of April, the day of the defendant’s first commission, or the 12th of March, the date of his second commission. The judge a quo correctly concluded that the duration of the office is to be reckoned from the 10th of March every second year, because this date is a certain one, and any other must be sought by computation, and be liable to variation.”
The question came up again in State ex rel. Wilson v. Parker, 80 La. Ann. 1182, with regard- to the office of public administrator; and Mr. Justice Spencer, as the organ of the court, said:
“We think that, where there is nothing in the act creating the office and its term directing otherwise, we should hold in the interest of public order that the term begins with the going into effect .of the act creating the office.”
[2, 3] The statute under consideration in this case does fix the beginning of the term, just as the Constitution fixed the length of it. And the learned counsel for the defendant therefore argue that the case before ns is controlled by a different rule from that stated in the two cases cited. They contend that the expression, “He shall serve for four years from the date of his induction into of-, flee,” refers to each and every succeeding appointee. According to grammatical construction, however, this clause refers only to the bank examiner who “shall be appointed on and after the passage of this act.” And there is no more reason for saying that the clause, “He shall serve for four years from the date of his induction into office,” means that each succeeding appointee shall have four years of service from the'date of his induction into office, than there was for contending that the expression, “The public administrator shall hold his office for the term of four years and until his successor is. qualified,” meant that each appointee should serve four years from the date of his commission. As to that contention, in the case last cited, it was said:
“But the defendant’s counsel urge with much earnestness that the act does provide otherwise, because it declares ‘that the public administrator shall hold his office for the term of four years, and until his successor is qualified,’ etc. We regard this clause as simply fixing the term of the office; and upon examination it will be found that those words are almost invariably used in the Constitution and laws of this state for fixing the terms of office. Thus it is said of the Governor, ‘He shall hold his office for the' term of four years.’ The same is said of the secretary of state, the auditor, the treasurer, the Attorney General, the judges, the sheriffs, the clerks. Does anybody suppose that these provisions entitle one of these officers who may be appointed in the middle of a term to hold for a full term? When the law says that, ‘The public administrator shall hold his office for the term of four years,’ it means precisely what it does when it uses the same words with reference to other officers. It means to fix the ‘term’ of the office, i. e., the longest time it may be occupied without reappointment; but does by no means imply that every incumbent shall hold it for four years, regardless of the time at which that term began, and of the time he was appointed. The effect of the defendant’s argument is to make the term * * * dependent upon the law. * * * This is to completely confound the term of that office with Parker’s tenure of it. The latter is within the control of the parties, and may be longer or shorter, according to circumstances; but the former is not. The term remains invariable, alivays the same, and is not subject, in its duration, to the wishes or agreements of any persons whomsoever ; while the tenure of an incumbent may always be terminated by his resignation and its acceptance. During one term there may be several tenures, but there cannot be several terms in one tenure.”
If the statute which we are now considering provided that each and every appointee “shall serve for four years-from the date of his induction into office,” the decisions which we have referred to would not be applicable. But'we would then have to say whether the Legislature had authority to alter the term of office fixed by the Constitution.
In the case of State ex rel. Wilkinson v. Hingle, 124 La. 655, 50 South. 616, it was said that the hold-over period of an incumbent in the office of police juror did not affect the date of beginning of the succeeding term of the office, corresponding with the first term, as determined by the statute. And in Ehret v. Police Jury, 136 La. 391, 67 South. 176, the former decision was affirmed in these words:
*111 “In the later case of State ex rel. Wilkinson v. Hingle, 124 La. 655 [50 South. 616], which also involved the office of parish treasurer, it was found that by Act 121 of 1898 the term of that office had been fixed at two years, .and the court held that the term expired every two years, and was-not extended by the failure of the police jury to re-elect the incumbent.”
The defendant’s counsel argue that the withdrawal by Governor Hall of the appointment of the defendant, which Governor Sanders had sent to the Senate, and the subsequent appointment of the defendant by Governor Hall and the confirmation by the Senate of that appointment, marked the beginning of a new term of four years. They contend that the doctrine of the decisions referred to therefore has no application to the peculiar facts of this case. They cite the decision in United States v. Kirkpatrick, 9 Wheat. 720, 6 L. Ed. 199, and its approval by this court, in State v. Powell, 40 La. Ann. 241, 4 South. 447. The latter was a suit against the principal and sureties on the bond of a sheriff and ex officio tax collector. The officer had been appointed and commissioned during a recess of the Senate to fill an unexpired term, and had furnished the bond sued on under that appointment. When the Senate convened the Governor sent in the name of the same official to the Senate, and the appointment was confirmed. Thereupon a new commission issued, and he qualified thereunder by subscribing to the oath, but did not furnish a new bond. The defense on the part of the sureties was that the bond was given under an appointment which expired when the Senate adjourned, and that the sureties were not liable for money collected by the official after his second appointment, which was confirmed by the Senate. The court held:
“Under article 69 of the Constitution the term of an officer appointed by the Governor during the recess of the Senate cannot extend beyond the end of the next ensuing session of the Legislature; and, where the same name is subsequently sent to the Senate and confirmed, and a new commission is issued, the latter is a distinct appointment, and requires a new bond.”
It must be observed, however, that the “term of an officer” in the foregoing decision does not mean the term of office. As was said in a ease heretofore quoted, the term or tenure of the officer means the time he may serve, and is not to be confounded with the term of the office as fixed in the Constitution or statute creating it.
Our conclusion is that the term of office of the examiner of state banks began on the day the first appointee went into office— that is, on the 28th of December, 1898 — and that the corresponding date in every fourth year thereafter marks the end of one and the beginning of another term of office. The district judge decided correctly that’the term of office to which the. defendant was appointed by Governor Sanders in January, 1911, during a recess of the Senate, and later by Governor Hall, whose appointment was confirmed by the Senate in 1912, expired on the 28th of December, 1914.
Whether the expiration of the term created a vacancy in the office which the Governor was authorized to fill by appointment during a recess of the Senate is a more troublesome question, in view of the difference of opinion expressed by the courts of other states.
The plaintiffs rely upon article 72 of the Constitution of 1913, which provides:
“The Governor shall have the power to fill vacancies that may happen during the recess of the Senate, in cases not otherwise provided for in this Constitution, by granting commissions which shall expire at the end of the next session; but no person who has been nominated for office and rejected shall be appointed to the same office during the recess of the Senate. The failure of the Governor to send to the Senate the name of any person appointed for office, as herein provided, shall be equivalent to a rejection.”
The defendant contends that the expiration of a term of office during a recess of the Senate does not cause a vacancy in the *113 office, because article 172 of the Constitution provides:
“All officers, except in case of impeachment or suspension, shall continue to discharge the duties of their offices until their successors shall have been inducted into office.”
[4-6] Does this provision of the Constitution, that all officers shall continue to discharge the duties of their offices until their successors shall have been inducted into office, prevent the happening of a vacancy when the term of an appointive office expires during a recess of the Senate? Is the bank examiner’s authority to continue to discharge the duties of his office after his term has expired, and until his successor is inducted into office, superior to the authority of the Governor to appoint his successor? Is the right 'of the bank examiner to continue to discharge the duties of the office after his term has expired and until his successor is inducted into office a superior right to that of his successor to be inducted into office when he has been appointed, and has taken the oath of office? In this form the question is to be answered by determining whether an appointee whom the Governor had authority to appoint by and with the advice and consent of the Senate may qualify and demand possession of the office before his recess appointment is confirmed by the Senate.
Until now it has never been doubted — perhaps because no one has thought of denying —that, when the term of an appointive office expires during a recess of' the Senate, the person appointed to succeed to the office may immediately qualify and enter upon his official duties, without waiting for his appointment to be confirmed by the Senate.
Counsel for defendant refer us to the case of State ex rel. Attorney General v. Rareshide et al., 32 La. Ann. 934, where this court laid down the doctrine:
“Appointments of public officers by the Governor which are by law subject to the advice and assent of the Senate are inoperative, if made after adjournment of the Legislature, unless to fill up such vacancies as are caused by death, resignation, or removal.”
It was not said, however, in the above syllabus, nor in the 'opinion with regard to the facts of that case, that such appointments are inoperative if made during a recess of the Senate. The phrase “if made after adjournment of the Legislature” has a significant meaning, with reference to the facts to which it was applied. It must be borne in.mind that the last sentence of article 72 of the Constitutions of 1898 and 1913, “The failure of the Governor to send to the Senate the name of any person appointed for office, as herein provided, shall be equivalent to a rejection,” was original matter in the corresponding article 69 of the Constitution of 1879. It did not appear in the preceding Constitutions. Section 10 of article 3 'of the first Constitution of this state — that of 1812 —merely provided:
“The Governor shall have power to fill upvacaricies that may happen during the recess of the Legislature, by granting commissions which shall expire at the end of the next session.”
In the corresponding article of the Constitution of 1845 was added:
“But no person who has been nominated for office and rejected by the Senate shall be appointed to the same office during the recess of the Senate.”
And this provision was copied into the corresponding article of the Constitutions of 1852, 1864, and 1868.
The Rareshide Case was decided in 1880, and the court was then construing for the first time the addition to article 69 of the Constitution of 1879, with which article 72 of the Constitutions of 1898 and 1913 corresponds precisely.
The adoption of the Constitution of 1879' caused all offices existing under the Constitution of 1868 and laws enacted thereunder to be vacated; but the incumbents in office *115 held over, according to the provisions of article 259 of the Constitution of 1879, until their successors were commissioned and qualified. See Wilson v. Wiltz, 32 La. Ann. 688. The terms of office of the defendants in the Rareshide Case had not expired when the Constitution of 1879 was adopted. They were holding over until their successors should be appointed and qualified. The Legislature met and organized under the new Constitution. The Governor did not submit to the Senate appointments of successors of the defendants, but appointed the relators after the Legislature had completed its session and adjourned. Therefore the relators in that case were appointed during a recess of the Senate to offices that had become vacant during a previous recess of the Senate. I-Ience the gist of the decision is that the Governor could not abuse his authority to make appointments without the advice and consent of the Senate to fill vacancies occurring during a recess of the Senate, by failing to make the appointments until after the Senate had met and adjourned. This was in accord with the spirit, if not thq very letter, of the new matter contained in article 69 of the then new Constitution. It was not decided,- however, that the right of the defendants to hold over until their successors should be appointed and qualified had prevented the occurrence of vacancies, which the Governor could have filled by appointment at the proper time. On the contrary, it was said:
“The vacancies in the cases before the court were not original or absolute in character. They were constructive vacancies. They became so previous to the assembling of the Legislature by virtue and effect of the adoption of the present Constitution, and continued so during the session of the Senate, and have not ceased to be such.”
It is true the court quoted a California case (People v. Bissell, 49 Cal. 407), and cited decisions rendered in other jurisdictions, declaring that the expiration of the term of an appointive office does not cause a vacancy that the Governor may fill without the advice and consent of the Senate, if the expiration occurs during a recess of the Senate, and the incumbent has the legal right and is willing to discharge the duties of the office until his successor is appointed and qualified. But these expressions went further than was necessary, and, in so far as they went beyond the facts and issue presented, they are mere obiter dicta, and form no part of the decision. The conclusion which the court stated most deliberately shows that the decision was based upon the fact that the vacancy had occurred previous to a session of the Senate,, and that the Governor had failed to make an appointment before or during that session, viz.:
“We therefore conclude that the article of the Constitution which confers upon the Governor the power to fill vacancies happening during the recess of the Senate does not extend to vacancies occurring previous to or during the session of that body.”
Our analysis of the facts of the Rareshide Case discloses that the decision is not a precedent for holding that the expiration of a term of office does not create a “vacancy” in its legal sense. Nor was the question decided in the ease of State ex rel. Baumback v. Dubuc, 9 La. Ann. 237, where the Governor had undertaken, during a recess of the Senate, to appoint a successor to an officer whose term had not expired.
The defendant’s counsel have referred us to a sentence in 29 Cyc. 1399, announcing the doctrine, supported by numerous decisions cited in the footnotes, viz.:
“Where provision is made by statute for holding over, the hold-over is regarded as in all respects a de jure officer, and the expiration of the term does not produce a vacancy which may be filled by the authority having the power to appoint to fill vacancies.”
The plaintiffs’ counsel have submitted another list of decisions holding that, when a term of office expires during a recess of the *117 Senate, and the incumbent is holding over, under express authority of the law, until his successor is inducted into office, there is a vacancy in the office, which the Governor may fill by appointment.
The second paragraph of section 2 of article 4 of the federal Constitution, corresponding with article 71 of our state Constitution, gives the President authority to appoint, by and with the advice and consent of the Senate, all officers whose appointments are not otherwise ’ provided for; and the third paragraph, corresponding with article 72 of our state Constitution, provides that:
“The President shall have power to fill vacancies that may happen during the recess of the Senate, * * * by granting commissions which shall expire at the end of their next session.”
Under these provisions of the federal Constitution, that distinguished jurist William Wirt, as Attorney General, advised President Monroe (1 Op. Atty. Gen. p. 412, October 22, 1823) as follows:
“The President has power to fill, during a recess of the Senate, by temporary commission, a vacancy that occurred by expiration of commission during a previous session of that body.”
Similar advice was given to President'Andrew Jackson by Attorney General Roger B. Taney in 1832 (2 Op. Atty. Gen. 525, 530); and to President John Tyler by Attorney General Hugh S. Legare (3 Op. Atty. Gen. 637, 1841); to President James K. Polk by Attorney General John Y. Mason (4 Op. Atty. Gen. 523, 1846); to President Franklin Pierce by Attorney General Caleb Cushing (7 Op. Atty. Gen. 187, 1855); to President Abraham Lincoln by Attorney General Edward Bates (10 Op. Atty. Gen. 356, 1862); to President Andrew Johnson by Attorney General Henry Stansberry (12 Op. Atty. Gen. 32, 1866), and by Attorney General William M. Evarts (12 Op. Atty. Gen., 449, 1868); to President Ulysses S. Grant by Attorney General Geo. H. Williams (14 Op. Atty. Gen. 562, 1875); to President Rutherford B. Hayes by Attorney General Charles Devens (16 Op. Atty. Gen. 523, 1880); to President Chester A. Arthur by Attorney General Benj. H. Brewster (17 Op. Atty. Gen. 521, 1884); to President Benjamin Harrison by Attorney General Wm. H. H. Miller (19 Op. Atty. Gen. 261, 1889); and to President Theodore Roosevelt by Attorney General Philander H. Knox (23 Op. Atty. Gen. 599, 1901), by Attorney General William H. Moody (25 Op. Atty. Gen. 258, 1904), and by Acting Attorney General Henry M. Hoyt (26 Op. Atty. Gen. 1907).
We are also referred to a decision by a judge of the United States District Court in Pennsylvania in 1868 contrary to the opinion of the Attorney Generals cited above, and we are referred to an opinion rendered later by one of the justices of the United States Supreme Court, serving as a member of the Court of Appeals, holding that the opinion of the District Court had not much weight' against the opinion of so many Attorney Generals, and against the usage of the chief executives acting thereon for so many years.
The plaintiffs’ counsel have referred us to nuffierous decisions in other states contrary to the doctrine quoted from 29 Cyc. 1399, among them being a Missouri case (State ex. rel. Atty. Gen. v. Thomas, 102 Mo. 85, 14 S. W. 108), where it was said:
“The office is vacant within legal intendment and for all purposes of election, or appointment, as well, when the official term of the occupant has expired, as in case of his death, resignation, or removal.”
The records in the office of the secretary of state offered in evidence in this case disclose that during the past 24 years — and that is as far back as the records furnish information on the subject- — -the Governors of this state have been regarding the expiration of a term of office as creating a vacancy, and •they have been filling such vacancies by appointments during recesses of the Senate. *119 Our attention is called to the records and minutes of this court, showing that, when the justices were appointed by the Governor, under the Constitution of 1879, four members were appointed during recesses of the Senate to succeed the justices whose terms had expired, and the appointees took the oath, served on the bench, and had handed down decisions before their appointments were confirmed by the Senate.
[7] The able jurists who have expressed the opinion that the expiration of a term of office does not create a vacancy as long as the incumbent has the right and is willing to perform the duties of the office give the word “vacancy” a literal and precise definition— a place that is empty or unoccupied. Those who have held that the expiration of a term of office does create a “vacancy” have given the word a more liberal, figurative meaning, with reference to the intention with which it is used in the Constitution. They have proceeded upon the theory — we might say axiom- — that the intention of the lawmaker, the object aimed at, and the purpose to be accomplished, being the fundamental inquiry in judicial interpretation, must control the literal meaning of a particular word in a statute. 6 A. & E. Enc. of L. 602.
To depart from the interpretation which has been given to articles 72 and 172 of our Constitution by all departments of the government and acted upon for so many years would, in some cases, extend the terms or tenures of the officers appointed by the Governor very far — perhaps two years — into the succeeding terms of office fixed by the Constitution and statutes, and would produce much confusion.
It may be said that the interpretation which has been put upon these provisions of our Constitution by the executive, the legislative, and judiciary departments of the government has only established a usage, and does, not prove its validity. That is true. But, as said by Mr. Justice Lamar, in the case of United States v. Midwest Oil Co., 236 U. S. 459, 35 Sup. Ct. 309, 59 L. Ed. 673, decided last year:
“Government is a practical affair intended! for practical men. Officers, lawmakers, and citizens naturally adjust themselves to any long-continued action of the executive department, on the presumption that unauthorized acts, would not have been allowed to be so often-repeated as to crystallize into a regular practice. That presumption is not reasoning in a circle, but the basis of a wise and quieting rule-that in determining the meaning of a statute- or the existence of a power weight shall be given to the usage itself, even when the validity of the practice is the subject of investigation^
“This principle, recognized in every jurisdiction, was first applied by this court in the-often-cited case of Stuart v. Laird, 1 Cranch, 299, 309 [2 L. Ed. 115]. There, answering the objection that the act of 1789 was unconstitutional in so far as it gave circuit powers to judges of the Supreme Court, it was said (1803). that ‘practice and acquiescence under it for a period of several years, commencing with the organization of the judicial system, affords an irresistible answer, and has indeed fixed the-construction. It is a contemporary interpretation of the most forcible nature. This practical exposition is too strong and obstinate to be shaken or controlled.’ ”
We conclude that the expiration of the defendant’s term of office on the 28th of December, 1914, created a vacancy which the Governor had authority to fill by the appointment made during the recess of the Senate, and that the plaintiff Sims is entitled to the possession of the office.
The judgment appealed from is annulled and reversed; and it is adjudged and decreed that the plaintiff R. N. Sims was legally appointed examiner of state banks on the 6th of January, 1915, and is entitled to possession of the office. The defendant is to pay the costs in both courts.