**STATE of North Dakota ex rel. Nicholas J. SPAETH, Attorney General, Petitioner,**

v.

**Allen I. OLSON ex rel. George SINNER, Respondents.**

**Civ. No. 10878.**

Supreme Court of North Dakota.

Jan. 4, 1985.

As Amended Jan. 11, 1985.

Nicholas J. Spaeth, Atty. Gen., Bismarck, for petitioner.

Thomas F. Kelsch, Sp. Asst. Atty. Gen., Bismarck, for respondent Allen I. Olson.

Malcolm H. Brown, Sp. Asst. Atty. Gen., Mandan, for respondent George Sinner; appearance by Richard J. Gross, Sp. Asst. Atty. Gen., Bismarck.

ERICKSTAD, Chief Justice.

The petitioner, Nicholas J. Spaeth, acting as Attorney General, has requested this Court to exercise its original jurisdiction to determine "whether defendant Allen Olson or relator George Sinner holds the Office of Governor."

Allen I. Olson was elected Governor of North Dakota during November 1980. He filed his oath of office on January 6, 1981. George Sinner was elected Governor of North Dakota during November 1984. He filed his oath of office on December 31, 1984.

Olson asserts that his four-year term under the provisions of Article V, Section 1, of the North Dakota Constitution expires subsequent to January 5, 1985. Sinner asserts that his four-year term as Governor began on January 1, 1985. Consequently, Olson and Sinner each asserts that he is Governor of this State with all the powers and responsibilities which devolve upon the occupant of that office.

■ Article VI, Section 2, of the North Dakota Constitution gives this Court appellate jurisdiction and also original jurisdic-

tion with authority to issue, hear, and determine such original and remedial writs as may be necessary to properly exercise its jurisdiction. The power vested in this Court to issue original and remedial writs is a discretionary power which may not be invoked as a matter of right, and this Court will determine for itself in each case whether that particular case is within its jurisdiction. *State ex rel. Foughty v. Friederich,* 108 N.W.2d 681 (N.D.1961).

It is well-settled that the power of this Court to issue writs in the exercise of its original jurisdiction extends only to those cases in which the question presented is *publici juris,* wherein the sovereignty of the State, the franchises or prerogatives of the State, or the liberties of its people are affected. *Gasser v. Dorgan,* 261 N.W.2d 386 (N.D.1977). To warrant the exercise of this Court's original jurisdiction the interest of the State must be primary, not incidental, and the public, the community at large, must have an interest or right which may be affected. *State ex rel. Vogel v. Garaas,* 261 N.W.2d 914 (N.D.1978); *State v. Omdahl,* 138 N.W.2d 439 (N.D.1965).

The question before us is whether Olson or Sinner currently holds the office of Governor. In a broader sense, we must resolve the question of the duration of the term of the Office of Governor and when an incoming Governor is authorized to assume the duties of that office.

The stakes in this case are nothing less than a resolution of who currently resides in the seat of government as the head of the executive branch of this State. We consider this a case of great public concern, and, accordingly, we assume original jurisdiction to resolve it on the merits.

Section 44–01–03, N.D.C.C., provides that an elected state officer may assume the duties of his elected office on the "first day of January next succeeding [his] election":

"*44–01–03. When state and district officers shall qualify.*—Except when otherwise specially provided, all state and district officers shall qualify on or before the first day of January next succeeding their election, or within ten days

thereafter, and on said first day of January or within ten days thereafter, shall enter upon the discharge of the duties of their respective offices, . . . "

Sinner asserts that under the foregoing statute he assumed the duties of the Office of Governor on January 1, 1985, by qualifying prior to that date. Olson asserts that, notwithstanding the foregoing statute, Sinner is precluded from assuming the Office of Governor on January 1, 1985, because the Certificate of Election issued to Sinner by the Secretary of State provides that Sinner was elected to the Office of Governor for a term of four years "commencing on the first Monday in January 1985." Olson asserts that because Sinner did not directly contest the Certificate of Election he cannot now "collaterally" attack its statement that his term does not commence until the first Monday in January.

Our statutory scheme requires the State Canvassing Board, based upon a vote count, to submit to the Secretary of State its determination of which person has been elected to an office. The Secretary of State is then required, under Section 16.1–15–44, N.D.C.C., to record those results and to transmit to the elected person a Certificate of Election. Regarding the nature of the State Canvassing Board's responsibilities, this Court stated in *State ex rel. Sathre v. Byrne,* 65 N.D. 283, 258 N.W. 121 (1934):

"Aside from the quasi judicial power to determine the genuineness of the election returns before them, and, in case of apparent mistake in the returns from any county, to take the necessary steps to have such mistakes corrected, *the functions and duties of the members of the state board of canvassers are purely ministerial.* 20 C.J. 200. See, also, State ex rel. Sunderall v. McKenzie, supra. The state board of canvassers has no authority to determine any question concerning the legality of an election or to pass upon the eligibility of a candidate for office. 20 C.J. 201. Such matters are wholly beyond the power of the state board of canvassers and are questions

for determination in some appropriate proceeding in a judicial tribunal." 258 N.W. at 124–125.

*See also Stearns v. Twin Butte Public School District No. 1,* 185 N.W.2d 641 (N.D.1971). It follows that the Secretary of State's statutory duty to prepare and transmit the Certificate of Election using the results submitted to him by the State Canvassing Board also constitutes a purely ministerial function. The preparation of the Certificate of Election does not require the Secretary of State to make discretionary determinations or to perform any function other than recording the results as submitted by the State Canvassing Board.

■ The effect of the Certificate of Election is to clothe the person to whom it is issued with a *prima facie* right to possess and to exercise the functions of the specified office. *Byrne, supra.* Under our statutory scheme, however, the Certificate of Election is not determinative of the term or dates to which the elected official is entitled to hold office, and we have neither been given nor found any authority to the contrary. There is authority, however, for the position that the law, and not the face of the commission [1] or Certificate of Election issued to an officer, controls the term of the office. *See, Colbath v. Adams,* 184 So.2d 883 (Fla.1966); *Conley v. Brophy,* 207 Ga. 30, 60 S.E.2d 122 (1950). *See also* 67 C.J.S. Officers, Section 66 (1978).

■ Application of the rule that a Certificate of Election is not determinative of the term of an office is particularly appropriate in the case before us where the term of the Office of Governor is provided for by constitutional provision [Art. V, Section 1, N.D. Const.], and the date upon which a Governor-elect is entitled to assume that office is provided for by statute [Section 44–01–03, N.D.C.C.]. Accordingly, we conclude that while the Certificate of Election

issued to Sinner by the Secretary of State evidences Sinner's *prima facie* entitlement to assume the Office of Governor it is not determinative of nor relevant to a determination of the term of office or the date upon which the Governor-elect may assume the duties of that office.

Section 44–01–03, N.D.C.C., prior to its amendment in 1975, provided that officers were to qualify "on or before the first Monday of January or within ten days thereafter" and that "on said first Monday of January or within ten days thereafter" were to assume the duties of their offices. The 1975 Legislature amended the provision to provide that officers were to qualify "on or before the first day of January next succeeding their election" and that "on said first day of January or within ten days thereafter" were to assume the duties of their offices. It is readily apparent that the Certificate of Election form issued to Sinner, which refers to the "first Monday in January", was consistent with the pre-1975 version of Section 44–01–03, N.D.C.C., but it is inconsistent with that Section as amended.

In a 1980 Attorney General's opinion, authored by Olson in his capacity as Attorney General, the legislative amendments to Section 44–01–03, N.D.C.C., are discussed. In that opinion, Olson concluded:

"[I]t is our opinion that the powers of the offices of Governor, Lieutenant Governor, Secretary of State, Auditor, Treasurer, Superintendent of Public Instruction, Commissioner of Insurance, Attorney General, Commissioner of Agriculture, Public Service Commissioner, and Tax Commissioner devolve upon the persons elected at the November, 1980, general election, at the earliest moment of January 1, 1981, or at the moment the oath of office has been taken, subscribed, and filed, whichever moment is later."

As evidenced by that opinion, Olson apparently believed, or so we could assume, that

---

1. The term commission has a usage which is the functional equivalent of a Certificate of Election.

under Section 44–01–03, N.D.C.C., the time when an elected officer could take office was changed from the first Monday next succeeding his election to the first day of January next succeeding his election.

During November 1984, the Certificate of Election issued to Sinner was signed, as required under Section 16.1–15–45, N.D.C.C., by incumbent Governor Olson and Secretary of State Ben Meier. In addition to being inconsistent with Section 44–01–03, N.D.C.C., the Certificate, by stating that Sinner's term was to commence on the first Monday in January 1985, did not comply with the form required under Section 16.1–15–45, N.D.C.C.:

"The certificate, in substance, shall be in the following form:

"At an election held on the _____ day of _____, 19___, _____ was elected to the office of _____ of this state for the term of _____ years from the _____ day of _____ in the year _____ ... and until his successor is duly elected and qualified."

■ Olson's assertion that the Certificate of Election precludes Sinner from taking office as Governor prior to the first Monday of January 1985 is based upon the mistaken premise that the Certificate of Election is relevant to the term of office or that it can effectively supersede or contravene a specific statutory provision. Where the Legislature has specified the time when an elected officer can assume the duties of his office, the ministerial act of the Secretary of State in preparing a statutorily prescribed form cannot be allowed to defeat the will of the Legislature. Having determined that the Certificate of Election is not relevant to nor dispositive of the term of an elected office, Sinner's failure to contest it or to otherwise challenge the Secretary of State's actions is of no consequence.

Olson next contends that, pursuant to Article V, Section 1 of the Constitution of North Dakota, he is entitled to serve as Governor for a full four years. Because he took the oath of office on January 6, 1981, Olson contends that his four-year term does not expire until the end of the day on January 5, 1985.

Article V, Section 1 provides:

"*Section 1.* The executive power shall be vested in a governor, who shall reside at the seat of government and shall hold his office for the term of four years beginning in the year 1965, and until his successor is elected and duly qualified."

Prior to 1975, Section 44–01–03, N.D.C.C., provided that all state officers were to qualify for and enter upon the discharge of the duties of their respective offices on or before the first Monday in January. In 1975, the Legislature amended Section 44–01–03 to provide that all state officers "shall qualify on or before the first day of January next succeeding their election, or within ten days thereafter, and on said first day of January or within ten days thereafter, shall enter upon the discharge of the duties of their respective offices...."

Olson argues that the constitutional provision requires that he serve a minimum of four full years in office, and that the statute must be read to produce such a result. Sinner contends that the statute is clear and unambiguous on its face and not in conflict with the constitutional provision, which does not specify dates for commencement and expiration of the Governor's term. He contends that the directive of the statute must therefore be followed and that his term commenced on January 1, 1985.

Olson's argument is based upon the faulty premise that allowing Sinner to take office on January 1 will shorten his constitutionally mandated four-year term of office. The constitution does not, however, provide that the Governor shall serve for four years; it provides that he "shall hold his office for the *term* of four years...."

■ Olson's argument does not recognize the critical distinction between the

term of the office and the term or tenure of the officeholder. The term of the office has been defined as "the fixed and definite period of time which the law describes that an officer may hold an office." *Sueppel v. City Council of Iowa City,* 257 Iowa 1350, 1357, 136 N.W.2d 523, 527 (1965). The tenure of the person holding an office may vary from the term of the office. *People ex rel. Sullivan v. Powell,* 35 Ill.2d 19, 217 N.E.2d 806 (1966). It is well settled that the term of the office is separate and distinct from the term or tenure of the officer, so that the term of the office is not affected by a shortening of the officer's tenure. *Graham v. Lockhart,* 53 Ariz. 531, 91 P.2d 265 (1939); *Wilson v. Shaw,* 194 Iowa 28, 188 N.W. 940 (1922); *State v. Young,* 137 La. 102, 68 So. 241 (1915); *State v. Johnson,* 156 Neb. 671, 57 N.W.2d 531 (1953); *Opinion of the Justices,* 112 N.H. 433, 298 A.2d 118 (1972); *Gillson v. Heffernan,* 40 N.J. 367, 192 A.2d 577 (1963); *Monte v. Milat,* 17 N.J.Super. 260, 85 A.2d 822 (1952); *Selway v. Schultz,* 268 N.W.2d 149 (S.D.1978); *State v. Meador,* 267 S.E.2d 169 (W.Va.1980).

■ Thus, when the incumbent holds over beyond the expiration of his term (as when the successor fails to qualify prior to the expiration of the term) it does not affect the term of the office, but merely shortens the tenure of his successor. *State v. Young, supra; State v. Johnson, supra; Opinion of the Justices, supra; Gillson v. Heffernan, supra; Monte v. Milat, supra; Selway v. Schultz, supra.* When Olson, as incoming Governor, elected to not assume the duties of his office until January 6, 1981, that choice did not affect the term of his office, which commenced on January 1, 1981. It merely shortened his tenure. "An officer may serve a shortened tenure, but nonetheless be deemed to have served a complete term." *Welty v. McMahon,* 316 N.W.2d 836, 839 (Iowa 1982).

This principle has been succinctly stated by the Supreme Court of South Dakota in *Selway v. Schultz, supra,* 268 N.W.2d at 151:

"Although there may be holdovers into portions of succeeding terms and appointments are made to replace these holdovers, the term of the replacement can only run from the expiration of the last legal term. A statutory term stands apart from the person who holds the office, and an appointee cannot be validly given a term which runs longer than the statute permits by ignoring holdover periods in the determination of succeeding terms. See *State v. Smiley,* 1924, 304 Mo. 549, 263 S.W. 825.

" 'Term of office' is distinct from and not to be confused with 'tenure of an officer;' therefore, we must adhere to the principle that the term of office is not affected by the holding over of an incumbent beyond the expiration of the term for which the incumbent was appointed, and such holding over does not change the length of the term but merely shortens the tenure of the succeeding officer."

In *Selway,* the incumbents remained in office for one year after the expiration of their terms when the appointing authority failed to make successor appointments. The court held that the term of office, which in this case was five years, began at the expiration of the prior terms, and the newly appointed successors could serve only the four years remaining on the unexpired terms.

There are strong public policy reasons which support the conclusion we reach today. Of primary importance to the citizens of the State of North Dakota is the need for certainty in the transference of the powers and duties of the chief executive officer of the State.

"Public interest requires that all possible certainty exist in the election of officers and the beginning and expiration of their terms, by law or resignation, and forbids that either should be left to the discretion or vacillation of the person holding the office...." *Campbell v. City of Boston,* 337 Mass. 676, 678, 151 N.E.2d 68, 70 (1958) (*quoting Warner v. Select-*

*men of Amherst*, 326 Mass. 435, 439, 95 N.E.2d 180, 183 (1950)).

Other courts have also recognized the public interest in this situation and have noted the uncertainty caused by allowing an officeholder to determine the date upon which his term will commence. *See, e.g., Conley v. Brophy*, 207 Ga. 30, 60 S.E.2d 122 (1950); *State v. Young, supra; State ex rel. Wilson v. Parker*, 30 La.Ann. 1182 (1878).

 We believe that there is no inconsistency between Section 44–01–03, N.D.C.C., and Article V, Section 1 of the North Dakota Constitution. The people of North Dakota, in amending that constitutional provision by initiated measure, envisioned that the Legislature would enact legislation implementing the provision:

> "This amendment shall be self executing, but legislation may be enacted to facilitate its operation." 1965 N.D.Sess. Laws, Ch. 475.

The term of Governor begins on January 1 and terminates on December 31 in the fourth year thereafter. The Governor can assume the duties of the office as of January 1 next succeeding his election without affecting the term of office. So construed, that constitutional and statutory scheme results in the term of office of Governor constituting exactly four years. Although a Governor may serve less than four years if, upon his own choosing, he does not take office until subsequent to January 1 next succeeding his election, his tenure, but not the term of the office, is thereby affected.

We are also mindful of the admonition that constitutional provisions should not be construed to bring about absurd results. *Haugland v. Meier*, 339 N.W.2d 100 (N.D. 1983). This is an outgrowth of the presumption that the people who adopt a constitutional provision intend a reasonable result. *State ex rel. Lein v. Sathre*, 113 N.W.2d 679 (N.D.1962). We envision that absurd results would ensue if we were to adopt Olson's position that Article V, Section 1 of our Constitution requires that each person who assumes the duties of

Governor is entitled to serve for four full years. If Olson is correct, all Governors of the State of North Dakota elected hereafter will be prohibited from assuming the duties of the office prior to January 6 of the year following their election. If any incoming Governor should qualify at some date later than January 6 of the year succeeding his election, this would set a new "earliest date" for succeeding Governors to assume office. If carried to its logical extreme, Olson's position would require that a person who succeeded to the Office of Governor upon the death or resignation of the sitting Governor in the middle of his term would be entitled to serve a full four years from the date of taking office. It is obvious that the public interest in assuring certainty in succession to the Office of Governor militates strongly against such a result. The potential for such a result was recognized by the Supreme Court of Louisiana:

> "Does any body [sic] suppose that these provisions entitle one of these officers, who may be appointed in the middle of a term, to hold for a full term? When the law says that 'the Public Administrator shall hold his office for the term of four years' it means precisely what it does when it uses the same words with reference to other officers. It means to fix the 'term' of the office, i.e., the longest time it may be occupied without re-appointment; but does by no means imply that every incumbent shall hold it for four years, regardless of the time at which that term began, and of the time he was appointed. The effect of defendant's argument is to make the term of this office depend upon the mere agreement and consent of the executive and incumbent, instead of making it dependent upon the law. Its duration is at the caprice of these functionaries.... This is to completely confound the term of that office with Parker's tenure of it. The latter is within the control of the parties, and may be longer or shorter, according to circumstances; but the for-

mer is not. *The term remains invariable, always the same, and is not subject in its duration, to the wishes or agreements of any persons whomsoever;* while the tenure of an incumbent may always be terminated by his resignation and its acceptance." [Emphasis added.] *State ex rel. Wilson v. Parker,* 30 La. Ann. 1182, 1184 (1878) (quoted in *State v. Young, supra,* 137 La. at 110, 68 So. at 244).

Olson's position on this issue is also significantly weakened by the fact that he assumed the office less than four full years after the date on which his predecessor, Arthur A. Link, filed his oath of office. The documents submitted to this Court indicate that Link subscribed and filed his oath of office on January 13, 1977. If Olson's interpretation of the constitutional provision were correct, he was not entitled to assume the duties of the office of Governor until January 13, 1981; however, he assumed those duties on January 6.

Other undisputed facts presented to the Court support our conclusion that the term of the office commenced on January 1, 1981, and expired on December 31, 1984. An affidavit of Bernard (Bud) Walsh, Director of Accounting Operations for the Office of Management and Budget, states that Olson authorized, was paid, and accepted a full month's salary without proration for the month of January 1981. He also authorized, was paid, and accepted payment for unvouchered expenses without proration for the full year 1981. Furthermore, a certification form prepared within the past two weeks by Olson's office-manager and sent to the Office of Management and Budget Central Personnel Division indicates that Olson's employment date was January 1, 1981, and his termination was December 31, 1984.

We also note that shortly before taking office as Governor, Olson was requested as Attorney General to issue an opinion on the same issue presented to this Court today. In that Attorney General's opinion, dated December 24, 1980, Olson stated that "the powers of the offices of Governor ... de-volve upon the persons elected at the November, 1980, general election, at the earliest moment of January 1, 1981, or at the moment the oath of office has been taken, subscribed, and filed, whichever moment is later." The opinion goes on to state that "[w]hile we are aware that the ceremonial transfer of offices will occur on January 6, 1981, the execution of the oath of office passes the final precursor to the legal transfer of offices on January 1, 1981." Olson concluded that the officials "who prior to January 1, 1981, have taken, subscribed, and filed with the Secretary of State their oaths of office shall have qualified and without the necessity of any further act shall, at the earliest moment of January 1, 1981, become the incumbents of the offices for which they have been elected, and the possessors of all the powers, duties, and responsibilities of the said offices."

On the same date, December 24, 1980, Olson sent a memorandum to all incumbent and newly elected constitutional officers which stated in part:

"It is my understanding that most, if not all, of the newly elected officials have already taken and filed the oath. Where such action has occurred, transfer of those offices must take place on January 1, 1981.

"For your information, I have chosen to wait until January 6, 1981, to take and file the oath so that both the ceremonial and actual transfers of the Office of Governor will coincide."

Olson conveyed the same information to then-Governor Arthur A. Link in a letter bearing the same date:

"Attached are an opinion issued to the Director of Accounts and Purchases and a memorandum to incumbent and newly elected constitutional officers relating to the time when transfers of those offices take place. You will note that if the oath of office has been taken and filed, transfer occurs on January 1, 1981.

"This is to advise you that I do not intend to take and file the oath of the office of Governor until January 6, 1981,

so that both the ceremonial and actual transfers of office will coincide."

We believe that the foregoing facts, as evidenced by the materials presented by the parties to this Court, support our conclusion that the term of office for which Olson was elected in 1980 commenced on January 1, 1981, and terminated on December 31, 1984.

Based upon the foregoing reasoning, we hold that George A. Sinner is currently, and has been since the first moment of January 1, 1985, the Governor of the State of North Dakota. We therefore grant an original writ enjoining Olson from exercising the powers and duties of the Office of Governor of the State of North Dakota.

BENNY A. GRAFF, NORMAN J. BACKES, A.C. BAKKEN and MAURICE R. HUNKE, District Judges, concur.

The Justices, the Honorable VERNON R. PEDERSON, the Honorable GERALD W. VANDE WALLE, and the Honorable H.F. "SPARKY" GIERKE III, having disqualified themselves, and there being a vacancy created by the death of the Honorable PAUL M. SAND, the following presiding district court judges were asked to sit with this Court and did participate in this case: the Honorable BENNY A. GRAFF, the Honorable NORMAN J. BACKES, the Honorable A.C. BAKKEN, and the Honorable MAURICE R. HUNKE.