Ernest Koella, Jr., in his official capacity as Chairman of the Republican Primary Election Commission, and as Chairman of the Tennessee Republican Executive Committee, Appellant,

*v.*

State of Tennessee on relation of Dr. Charles R. Moffett, Appellee.

405 S.W.2d 184.

(*Nashville,* December Term, 1965).

Opinion filed July 8, 1966.

Petition for Rehearing Denied July 22, 1966.

630

E. Bruce Foster, Jerome G. Taylor, Knoxville, M. H. Gamble, Jr., Maryville, and Ray H. Jenkins, Knoxville, for appellant.

Paul T. Gillenwater, and Norman L. Griffin, Knoxville, for appellee.

Mr. Justice Creson delivered the opinion of the Court.

This appeal comes from the First Circuit Court of Davidson County, Tennessee. On June 21, 1966, appellee here, petitioner below, Dr. Charles R. Moffett, filed in the First Circuit Court of Davidson County, Tennessee, a petition for alternative writ of mandamus. Named as defendant in this petition was appellant here, Ernest Koella, Jr., in his official capacity as Chairman of the Republican Executive Committee. The petitioner below, appellee here, sought, by means of the petition for alter-

native writ of mandamus, to have his name placed on the official ballot in the August 4, 1966 Republican Primary Election, as a candidate for the office of Governor of the State of Tennessee. The petition alleged that Dr. Charles R. Moffett was of proper age and duly qualified under the laws of the State of Tennessee to seek the office of Governor. It further alleged that the petitioner had, on June 6, 1966, filed his petition with the defendant to have his name placed upon the official ballot in the Republican Primary, as a candidate for the office of Governor of the State of Tennessee. It is also alleged in the petition that the defendant below, Ernest Koella, Jr., in his official capacity, returned said petition, giving as a basis for doing so, that the petition was not acceptable because it was not postmarked or in his hands before 12:00 Midnight, June 6, 1966.

On June 24, 1966, Ernest Koella, Jr. filed his answer, which admitted that he was the duly elected Chairman of the Republican Executive Committee and the Republican Primary Election Commission, as alleged. His answer denied that he had received the petition prior to Midnight, June 6, 1966; denied that it was a lawful petition, and denied that a filing on June 6, 1966 complied with the statutory mandate that a nominating petition be filed ''at least sixty (60) days prior to the date of the election.''

After a hearing on June 24, 1966, an order was entered June 27, 1966, *nunc pro tunc,* as of June 24, 1966, granting a peremptory writ of mandamus, and ordering that the name of appellee, Dr. Charles R. Moffett, as a nominee of the Republican party, as a candidate for the office of Governor of Tennessee, be placed on the ballot for the August 4, 1966 Republican Primary Election. Appeal was thereafter timely perfected by appellant to this Court,

which heard argument at a Special Session, on June 29, 1966.

While the brief filed by the appellant contains three assignments of error, there is really only one question before this Court; that is—Where a statute requiring that a qualifying petition for a gubernatorial candidate in a party primary be filed "at least sixty (60) days" before the election date and the sixtieth day before the election falls on Sunday, may the petition be filed the following day though only fifty-nine days before the election?

No Bill of Exceptions has been filed in this case and it is before this Court on the original petition, the answer thereto, the judgment of the court below awarding the peremptory writ, and the briefs of the respective parties. No question is made in this Court but that the qualifying petition was filed on June 6, 1966. Neither is any question made as to the sufficiency of the form of the petition. The sole and only question here presented and to be decided is as heretofore stated.

T.C.A. sec. 2-811, which sets out the requirements for the filing of petitions of the sort here involved, reads as follows:

"*2-811. Nominating petitions of candidates for state wide elections—Form—Certification of names to county commissions.*—The name of no candidate for office elected by the electors of the entire state shall be printed upon any official ballot used in any primary under this chapter unless, at least sixty (60) days before such primary, a nominating petition personally signed by the candidate shall be filed in his behalf with the authorities herein designated, signed by twenty-five

(25) or more qualified voters of the party whose nomination he seeks. Such nominating petitions shall be in substance as follows: 'We the undersigned qualified voters of the county of ——, State of Tennessee, and members of the —— party, hereby nominate —— of —— County as a candidate for the office of —— to be voted in the primary election to be held by said party on the —— day of ——. We request that his name be printed upon the official ballot to be used in such primary.' Where only one (1) candidate for any office for which a candidate is to be nominated under this chapter shall so qualify, he shall be declared the nominee for that office and his name shall be placed on the official ballot.

The nominating petitions shall be filed with the respective chairmen or secretaries of the state primary election commissions for the respective parties.

It shall be the duty of the chairmen of the respective state primary election commissions to certify to the chairmen of the various county primary election commissions the names of all candidates in whose behalf nominating petitions have been filed not less than forty (40) days before the date of the primary, and it shall be the duty of the county primary election commissioners to have printed upon the official primary ballots herein provided for the names of all candidates so certified to them. [Acts 1937 (2nd E.S.), ch. 2, secs. 18, 19; C.Supp.1950, secs. 2227.9, 2227.10 (Williams secs. 2227.18, 2227.19); Acts 1961, ch. 164, sec. 2; 1963, ch. 382, sec. 2.]''

Also to be considered in this case is T.C.A. 1-302, which sets out the method for computation of time, and reads as follows:

"1-302. *Computation of time.*—The time within which any act provided by law is to be done, shall be computed by excluding the first day and including the last, unless the last day is a Saturday, a Sunday, or a legal holiday, and then it shall also be excluded. [Code 1858, sec. 48; Shan., sec. 60; Code 1932, sec. 11; Acts 1965, ch. 203, sec. 1.]"

▪ ██ There is no doubt that if one counts, as one must, from August 4, 1966, backward, excluding the first day but including the last, or, for that matter, if one counts forward, there are only fifty-nine (59) days between August 4, 1966 and June 6, 1966, the sixtieth day being Sunday, June 5. Thus, the question is squarely presented, whether or not the fact that the sixtieth day falls upon a Sunday, allows a potential candidate to file on the following Monday, fifty-nine days prior to the date of the election.

In 25 Am.Jur.2d 831, (Elections Sec. 140), it is said:

"As a general rule, statutory provisions requiring a petition, certificate, or application of nomination to be filed with a specified officer within a stipulated period of time are mandatory. The officer may refuse to accept such a document for filing if it is not presented in time, and the time may not be extended by custom or practice adopted by the officer. However, a late filing has been excused in a few cases where a governmental official having authority over the filing of nominating petitions rendered an erroneous opinion as to the proper final filing date, and the prospective candidate relied upon such opinion."

It is further said in 29 C.J.S. Elections sec. 137, p. 401:

"If the last day for filing a certificate falls on a Sunday or a legal holiday, it must be filed the day before in order to be in time."

In conformity with this is the annotation in 98 A.L.R.2d 1357 (Time Computation—First and Last Days, Sec. 6), where the following appears:

"(a) *Nominating petitions.* Generally, the view has been taken that under statutes providing for the filing of nomination petitions 'at least' or 'not less than' a certain number of days before an election, the fact that the last filing day falls on a Sunday or holiday does not postpone the time for performance to the next business day, but rather, in order to be timely, the petition must be presented on the first day before the Sunday or holiday."

These text authorities accurately reflect the rule of the vast majority of the case law.

North Dakota enacted statutes, both with respect to qualifying petitions and computations of time, quite similar to those in effect in Tennessee. The Supreme Court of North Dakota had before it a case practically identical to the case at bar. In *State ex rel. Anderson v. Falley* (1900) 9 N.D. 464, 83 N.W. 913, it was reasoned and held:

"When the amended certificate was presented, granting that it was, in law, presented when placed in the registered mail at Grand Forks, it was too late. Section 503, Rev.Codes, declares: 'Certificates of nomination to be filed with the secretary of state shall be filed not less than thirty days before the day fixed by law for the election of the persons in nomination.' This time limit has been held mandatory by every court that has ever passed upon a similar statute, so far as

we can ascertain. See *Lucas v. Ringsrud,* [3 S.D. 355, 53 N.W. 426], supra; *State [ex rel. Casper] v. Piper* [50 Neb. 40] 69 N.W. 383; *Hallon v. Center* [102 Ky. 119] 43 S.W. 174; *In re Cuddeback* (Sup.) [3 A.D. 103] 39 N.Y.Supp. 388.

The date of the election was November 6, 1900. The amended certificate was placed in the mail October 8, 1900. Excluding the latter date, and including the day of election, the certificate was mailed 29 days before election. Under a mandatory statute, a default of 1 day is as fatal as a default of 20 days. True, the thirtieth day preceding the day of election was Sunday, and a legal holiday, under section 5124, Rev. Codes; and section 5127, Id., reads: 'Whenever an act of a secular nature, other than a work of necessity or mercy, is appointed by law or contract to be performed upon a particular day, which falls upon a holiday, such act may be performed upon the next business day with the same effect as if it had been performed upon the day appointed.' But this section has no application to the performance of the act under consideration. As the general election always falls on Tuesday, it follows that the thirtieth preceding day is always the fifth preceding Sunday. It is not a case where the date may or may not fall upon Sunday. The date must fall on Sunday every time. If we say the holiday provision must apply to this time limitation, then the legislature fixed a limit of 30 days, well knowing that it must be 29 days in every instance. That would seem absurd. But the terms of section 5127 exclude this limitation. That section says that when an act is appointed 'to be performed upon a particular day,' etc. But this act is not appointed for a particular day. It must be done

not less than 30 days before election. But there is no limit to the extension of this time. The certificate may be filed any number of days exceeding 30 before the election. If the limitation declared that the certificate must be filed on the thirtieth day before election, then the statute would apply. But the distinction seems very clear. The supreme court of California has placed the same construction upon an identical statute under practically the same facts. *Griffin v. Dingley* [114 Cal. 481], 46 Pac. 457. When the amended certificate was presented, the secretary was without authority to file it, and hence he cannot be required to certify the nomination therein contained. The alternative writ of mandamus heretofore issued in this case is quashed. All concur.''

Like reasoning and result are found in the following well-reasoned decisions:

*Griffin v. Dingley* (1896) 114 Cal. 481, 46 P. 457; *Steele v. Bartlett* (1941) 18 Cal.2d 573, 116 P.2d 780; *Hutchins v. County Clerk of Merced County* (1934) 140 Cal. App. 348, 35 P.2d 563; *State ex rel. Thatcher v. Brodigan* (1914) 37 Nev. 458, 142 P. 520; *Cross v. Cohen* (1944) 183 Misc. 611, 50 N.Y.S.2d 42; *State ex rel. Miller v. Burnham* (1910) 20 N.D. 405, 127 N.W. 504; *State ex rel. Earley v. Batchelor* (1942) 15 Wash.2d 149, 130 P.2d 72; *Donohoe v. Shearer* (1958) 53 Wash.2d 27, 330 P.2d 316, and *Seawell v. Gifford* (1912) 22 Idaho 295, 125 P. 182.

The only case which the research of counsel, and our own, has revealed, in which a Court has differently construed a statute similar to ours is *Manning v. Young* (1933), 210 Wis. 588, 247 N.W. 61. In that case, the requirement was that the petition be filed ''not more than

forty nor less than twenty days before the primary therein provided for." Thus, unlike this case, there was a limited period of time during which a petition could be filed. Clearly, the Wisconsin statute fixed a starting point on which petitions for qualification could be filed, and before which they could not be filed. The statute also fixed a cutoff point for the filing of such petitions. If this period ended upon a Sunday or a holiday, the period was extended to the following day. To the contrary, the legislative mandate under Tennessee statutes pertinent to qualifying petitions is that they be filed at least sixty (60) days prior to the date of election; that is, sixty (60) days prior to August 4, 1966.

■ ■ While perhaps not so stated in terms, the essence of the position of appellee here is that T.C.A. sec. 2-811 and T.C.A. sec. 1-302 are to be read in *pari materia*. It is readily apparent that in some, if not many situations, the concepts embodied in these two enactments may come into conflict. It is equally obvious that the time provision contained in T.C.A. sec. 2-811 is directed to the single subject matter of the primary election; while, on the contrary, the provisions of T.C.A. sec. 1-302 are pointed to the computation of time generally. The applicable and true rule is then as enunciated in *State ex rel. v. Safley, Chairman* (1938) 172 Tenn. 385, 112 S.W.2d 831, as follows:

"Where there is a general provision applicable to a multitude of subjects, and also a provision which is particular and applicable to one of these subjects, and inconsistent with the general provision, it does not necessarily follow that they are so inconsistent that they both cannot stand. The special provision will be deemed an exception, and the general provision will

be construed to operate on all the subjects introduced therein except the particular one which is the subject of the special provision.''

The above has been approved as lately as *Woodroof v. City of Nashville* (1946) 183 Tenn. 483, 192 S.W.2d 1013, in which case the opinion was written for the Court by the late and muchly lamented Chief Justice Grafton Green.

■ In our opinion, the provisions of T.C.A. sec. 2-811 cannot rightly be considered otherwise than mandatory. They say, without qualification, that a petition such as that here before us shall be filed at least sixty (60) days before such primary election. Whatever method of counting time is used here, the unalterable fact is that the qualifying petition here was filed only fifty-nine (59) days before election.

It is pertinent to point out that this record, aside from appellee's brief, is silent as to any official misconduct or mistake which might justifiably be said to have misled the appellee, to his detriment, or to excuse his noncompliance with the mandatory terms of the qualifying statute. The choice of filing time was his.

■ If it appeared on this record, by proper pleading and proof, that the appellee was justifiably misled as to proper calculation of time to file his petition for qualification, by official opinion, this Court would not hesitate to excuse him from literal compliance with the otherwise mandatory Tennessee statute; and would order that such person, or any other similarly situated, be placed upon the ballot. There is ample authority available to the Court for this view. We say again, however, that this record does not present the situation just alluded to. It

is also pertinent to note that nothing said in this Opinion has any reference to persons who have filed their petitions and whose names have been placed on the ballot. The only thing now before us is a petition for writ of mandamus; traditionally, a very narrow remedy.

It is thus this Court's clear duty to reverse the judgment of the court below, to quash the peremptory writ of mandamus, and to assess the costs against appellee. Judgment will be entered accordingly.

BURNETT, CHIEF JUSTICE, and DYER, JUSTICE, concur.

WHITE and CHATTIN, JUSTICES, not participating.

## Opinion on Petition to Rehear

Since the release of our original opinion in this case, we have been presented with a petition to rehear on behalf of Dr. Charles R. Moffett. This petition argues that this Court erred in the following particulars: (1) failed to consider and apply the doctrine of judicial estoppel (2) erred in holding that the computation of time, as set forth in T.C.A. sec. 1-302, was not applicable (3) erred in finding and holding that the petitioner was not misled as to the last date upon which his petition could be filed, and (4) in restricting the result reached in petitioner's case to that case.

Petitioner's first contention, that this Court erred in failing to consider the doctrine of judicial estoppel, is without merit. That argument was made in his original brief and was considered at the time this Court wrote the original opinion. The position taken by Koella on appeal is not inconsistent with his position that the petition was not properly filed on June 6, 1966. This position was contained in Koella's answer filed in the trial court,

so there was no attempt by him to raise this issue for the first time on appeal.

Petitioner's second contention, that T.C.A. sec. 1-302 is to be considered in *pari materia* with T.C.A. sec. 2-811, was given full and adequate consideration in the original opinion, and nothing contained in the petition to rehear provides any substantial basis for changing the conclusion reached in the original opinion.

The third contention made by petitioner here, that he was misled as to the last date upon which his petition could be filed, is outside the scope of the pleadings filed by him in the trial court, and therefore, for the reason stated in the original opinion, is not available to Dr. Moffett on the record as presented to this Court.

The petitioner's final insistence is to the effect that his constitutional rights were violated because this Court, in deciding his case, failed to rule upon other cases that might arise. Obviously, this Court cannot adjudge matters that are not before it. Therefore, the fact that this Court refused to exceed its authority and decide matters not properly before it, certainly cannot be said to have, in any way, violated the petitioner's constitutional rights.

Petition to rehear is denied.

BURNETT, CHIEF JUSTICE, and DYER, JUSTICE, concur.

WHITE and CHATTIN, JUSTICES, not participating.