Darlene and Erling HAUGLAND, Petitioners and Appellants,

v.

Nicholas J. SPAETH, Attorney General, State of North Dakota, Respondent and Appellee.

Civ. No. 910117.

Supreme Court of North Dakota.

Nov. 12, 1991.

Kenneth S. Rau, Moench Law Firm, Bismarck, for petitioners and appellants.

Richard R. Tessier, Asst. Atty. Gen., Bismarck, for respondent and appellee.

LEVINE, Justice.

The Hauglands appeal from a district court judgment affirming the Attorney General's decision to suspend their liquor license. We affirm.

Darlene and Erling Haugland are owners of The South Forty, an eating establishment in Lincoln. While the South Forty was under construction, the North Dakota Department of Health inspected it and issued the Hauglands a restaurant license. That same month, the Hauglands applied for and received, from the Attorney General, a license to sell retail alcoholic beverages.

Because a fire safety inspection of the restaurant was not conducted after the completion of construction, the Attorney General requested a Deputy State Fire Marshal to perform one. The inspector noted several "fire corrections to be made." After receiving the results of the inspection, the Attorney General informed the Hauglands that they must correct the deficiencies within thirty days. The corrections included the installation of an additional upper floor remote exit, lighted exit signs, and a solid-core kitchen door.

Ms. Haugland wrote to inform the Attorney General that the required corrections were nearing completion. The Attorney General relied on Ms. Haugland's letter and did not revoke the South Forty's liquor license.

In June of 1990, the Deputy Fire Marshal performed a second inspection that showed there were still uncorrected deficiencies. The Attorney General held an administrative hearing and determined that the South Forty did not meet state fire safety requirements. The Attorney General ordered that the South Forty's liquor license be suspended until the building complied with all fire safety requirements as determined by the State Fire Marshal. The Hauglands appealed from the suspension order. The district court affirmed and this appeal followed.

The Hauglands assert that the Attorney General did not follow the proper statutory procedure and that the decision to suspend their liquor license is therefore not in accordance with the law. NDCC § 28–32–19(1). They contend that several statutes prohibit the Attorney General from conducting independent safety inspections to determine an establishment's eligibility for a liquor license. We disagree.

 Section 28–32–19, NDCC, governs this Court's review of administrative agency decisions. Although the district court's analysis is entitled to respect, we review the decision of the agency, rather than that of the district court. *E.g, Holmgren v. N.D. Workers Comp. Bur.*, 455 N.W.2d 200 (N.D.1990). This Court normally defers to a reasonable interpretation of a statute by the agency enforcing it when that interpretation does not clearly contradict statutory language. *Schaefer v. Job Service North Dakota*, 463 N.W.2d 665 (N.D.1990).

 The interpretation of a statute is a question of law fully reviewable by this Court. *Christianson v. City of Bismarck*, 476 N.W.2d 688 (N.D.1991). A statute must be interpreted reasonably and consistently with the intent of the legislature. *Boehler v. Backes*, 461 N.W.2d 103 (N.D.1990). When construing a statutory

provision, this Court considers the entire chapter in which it is contained and, to the extent possible, interprets the provision consistent with the intent and purpose of the entire act. *Production Credit Ass'n of Minot v. Lund*, 389 N.W.2d 585 (N.D.1986).

■ The Hauglands rely upon section 23–09–02, NDCC, which directs that only the Health Department enforce health, safety and sanitation requirements for hotels, lodginghouses, restaurants and boardinghouses. They argue that the South Forty is a restaurant,[1] that section 23–09–02, NDCC, gives the Health Department exclusive authority to determine if a restaurant meets health and safety requirements and that, therefore, only the Health Department, and not the Attorney General, may regulate the South Forty. Section 23–09–02, NDCC, says:

"The state department of health and consolidated laboratories shall enforce the provisions of this chapter. Under no circumstances may any other state agency enforce the provisions of this chapter or adopt rules which relate in any way to the provisions of this chapter nor may any other state agency expend any moneys, including salaries, which would involve the agency or its employees to work related to the provisions of this chapter."

However, section 23–09–02, NDCC, is contained in the chapter which establishes health and safety requirements for restaurants, hotels, lodginghouses and boardinghouses. Nowhere does chapter 23–09, NDCC, refer to retail liquor licensing or retail liquor establishments. Section 23–09–02, NDCC, neither addresses retail liquor licensing nor prohibits the Attorney General from enforcing mandatory qualifications for retail liquor licenses. Instead, section 23–09–02, NDCC, prohibits agencies other than the Health Department from enforcing the health and safety provisions contained in chapter 23–09, NDCC.

On the other hand, chapter 5–02, NDCC, contains retail licensing requirements and empowers the Attorney General to issue state retail liquor licenses. Section 5–02–01, NDCC, vests the Attorney General with the ultimate responsibility to ensure retail license applicants meet the requisite qualifications. Section 5–02–01, NDCC, says:

"Except as otherwise provided in section 5–02–01.1, any person engaging in the sale of alcoholic beverages at retail without first securing an appropriate license from the attorney general and the governing body of any city, or board of county commissioners if said business is located outside the corporate limits of a city, is guilty of a class A misdemeanor. This section does not apply to public carriers engaged in interstate commerce."

Section 5–02–02, NDCC, includes a requirement that an applicant must comply with state and local safety regulations and authorizes the Attorney General to require that the license applicant provide additional information as necessary for determining license eligibility. Section 5–02–02, NDCC, says, in part:

"No retail license may be issued to any person unless the applicant files a sworn application, accompanied by the required fee, showing the following qualifications:

"4. The building in which business is to be conducted must meet local and state requirements regarding the sanitation and safety.

"6. The attorney general, or local governing body, may require the applicant to set forth such other information in the application as necessary to enable them to determine if a license should be granted."

Under our statutory scheme, the Attorney General is the retail liquor licensing authority. NDCC § 5–02–01; NDCC § 5–02–02. The Health Department is the restaurant licensing authority. NDCC § 23–

---

1. NDCC section 23–09–01(6) defines "restaurant" as:

"[E]very building or other structure, or any part thereof, and all buildings in connection therewith, that are permanently kept, used, maintained, advertised, or held out to the public as a place where meals or lunches are served, but where sleeping accommodations are not furnished and includes a limited restaurant restricted to a specified menu."

09–02; NDCC § 23–09–16.[2] These licensing responsibilities are distinct. Construing sections 5–02–01 and 5–02–02, NDCC, together with sections 23–09–02 and 23–09–16, NDCC, and considering the chapters in which they are contained, we conclude that the Attorney General's authority to issue retail liquor licenses is plenary, not derivative, and may be exercised independent of the exercise of the State Health Department's authority to license and regulate restaurants.

■ The Hauglands next argue that the legislature intended to make sections 18–01–14 through 18–01–27, NDCC, the state's exclusive fire abatement procedures and that the Attorney General cannot suspend a liquor license for fire hazards until this abatement process is completed. However, there is nothing within the Fire Marshal fire abatement statutes to suggest that these fire safety procedures are exclusive. The Fire Marshal is authorized to use the abatement procedures outlined in sections 18–01–14 through 18–01–27, NDCC, to abate fire hazards but we see nothing in these statutes that requires the Attorney General to exhaust the fire abatement statutory procedure prior to suspending a liquor license because of the existence of a fire hazard.

The Hauglands also challenge several state fire code violations found by the State Fire Marshal and adopted by the Attorney General. The Hauglands assert that the Attorney General did not properly apply the fire inspection code when the Attorney General required the installment of an additional remote upper floor exit, lighted exit signs, and a solid-core kitchen door.

■ When we examine findings of fact made by an administrative decision-maker, we look to see if they are supported by a preponderance of the evidence. NDCC § 28–32–19(5). In determining whether an agency's findings of fact are supported by a preponderance of the evidence, we do not make independent findings of fact or substitute our judgment for that of the administrative decision-maker, but determine only whether a reasoning mind reasonably could have determined that the factual conclusions were proved by the weight of the evidence. *Boehler, supra.* When this Court reviews the testimony of an agency's qualified expert, we do not substitute our judgment for that of the expert. *NSP v. Public Service Com'n,* 452 N.W.2d 340 (N.D.1990).

■ The Hauglands first contest the finding that a second remote exit was required on the building's upper floor. They say that the Deputy Fire Marshal erred when she did not use a National Fire Code formula which, when applying the dimensions of the second floor, negates the need for a second remote exit. However, the Deputy Fire Marshal testified that the distance between exits is not the only criterion and that placement of exits and locations of potential fire hazards must also be considered. She stated that proper exit placement must ensure that a single fire will not simultaneously block all doorways and that, currently, a fire on the South Forty's first floor could quickly travel up both stairwells blocking and rendering useless the upper floor's present exits. Based upon this testimony, the agency reasonably could conclude an additional upper floor exit is required.

The Hauglands further challenge findings that directional and exit signs were not properly installed. However, the record, which shows that the Hauglands purchased the required self-illuminating signs but had not yet installed them at the time of the Deputy Fire Marshal's second inspection, support the findings of fact.

Finally, the Hauglands contest the finding that the kitchen door was not adequate.

**2.** NDCC section 23–09–16 says:

"Before any hotel, lodginghouse, restaurant, or boardinghouse may be operated in this state, it must be licensed by the state department of health and consolidated laboratories. A limited restaurant license may be issued by the department to a licensee and a limited restaurant is restricted to a specified menu. The department may adopt rules relating to limited restaurants. Application for license must be made to the department during December of every year, or prior to the operating of the hotel, restaurant, lodginghouse, or boardinghouse, as the case may be. Such application must be in writing on forms furnished by the department, and must be accompanied by the required fee."

The Hauglands argue that placing sheetrock on the louvered area satisfied the Fire Marshal's solid-core door requirement between the kitchen and passageway. However, the Deputy Fire Marshal's undisputed testimony indicated the door's web-glass was required to be surrounded by a metal frame. Apparently, the present wooden frame would burn faster than the surrounding door causing the web-glass to fall out and lessen the necessary fire containment time. From the record and the Fire Marshal's testimony, we agree that a reasoning mind reasonably could conclude that the weight of the evidence supports the Attorney General's factual findings.

We therefore conclude that the findings of fact are supported by the preponderance of evidence, the conclusions of law are sustained by the findings of fact and the decision is supported by the conclusions of law.

Accordingly, we affirm the judgment of the district court affirming the decision of the Attorney General.

ERICKSTAD, C.J., and GIERKE, VANDE WALLE and MESCHKE, JJ., concur.