STATE of North Dakota ex rel. Jim
KUSLER, Secretary of State,
Petitioner and Relator,

and

Kevin Cramer, Chairman of the
North Dakota Republican
Party, Intervenor,

and

Darold Larson, Intervenor,

v.

George SINNER, Governor of the State
of North Dakota, Respondent.

Civ. No. 920270.

Supreme Court of North Dakota.

Sept. 26, 1992.

John D. Kelly (argued), Harlan G. Fuglesten, and Steven A. Johnson, Special Asst. Attys. Gen., Fargo, for petitioner and relator. Appearance by Rosellen Sand, Asst. Atty. Gen.

Richard J. Gross (argued), Bismarck, for respondent.

Traynor, Rutten & Traynor, Devils Lake, for intervenor Kevin Cramer, Chairman of the North Dakota Republican Party; appearance by John T. Traynor.

Winkjer, McKennett, Stenehjem, Reierson & Forsberg, Williston, for intervenor Kevin Cramer, Chairman of the North Dakota Republican Party; argued by Dean Winkjer.

Peter B. Crary Law Office, Fargo, filed brief on behalf of intervenor Darold Larson.

MESCHKE, Justice.

This is an original proceeding seeking an interpretation of the statutory procedure for, and the timing of, a special election to fill a vacancy in the office of United States Senator from North Dakota. Because of related statutory deadlines mandated for filing certificates of nomination and for making ballots available to absentee voters, we conclude that the statutory authorizations for calling and holding the special election to fill this vacancy do not allow the special election to be held at the same time as the November 3 general election.

After more than thirty-two years of distinguished service as United States Senator from North Dakota, Quentin N. Burdick died on September 8, 1992. Over two years remained of his term. Governor George Sinner appointed Senator Burdick's widow, Jocelyn, to temporarily fill the vacancy until a successor is elected at a special election. In preparation for a special election, the North Dakota Democratic–NPL party called its nominating convention for October 3, 1992, and the North Dakota Republican party called its convention for October 4, 1992.

On September 16, 1992, Governor Sinner issued a writ of election setting the special election to fill the vacancy to coincide with the November 3 general election. This election is scheduled less than 60 days after Senator Burdick's death and 30 days after the political parties' nominating conventions.

On September 21, Secretary of State Jim Kusler, the state's chief election officer, petitioned this Court to exercise original jurisdiction to resolve significant questions of statutory interpretation about the timing and administration of the special election to fill the Senate vacancy. The Petitioner seeks an appropriate writ to nullify the writ of election issued by Governor Sinner, the respondent, and also to compel the Governor to schedule the special election so that candidates may comply with NDCC 16.1–12–04(5) in filing their certificates of nomination at least sixty days before the special election. As respondent, the Governor joins with the Secretary of State in asking this Court to clarify the procedures for calling and holding the special election to fill the vacancy.

We immediately granted the Petitioner's request for expedited disposition under NDRAppP 2. We have also granted motions to intervene on the side of the Petitioner by Kevin Cramer, Chairman of the North Dakota Republican party, and by Darold Larson, a prospective independent candidate.

N.D. Const., Art. VI, § 2 authorizes this Court to exercise original jurisdiction and to issue original and remedial writs necessary to properly exercise its jurisdiction. Under that constitutional provision, the power vested in this Court to issue original writs is a discretionary power which may not be invoked as a matter of right. *State ex rel. Spaeth v. Olson ex rel. Sinner*, 359 N.W.2d 876 (N.D.1985). *Compare Municipal Services Corp. v. Kusler*, 490 N.W.2d 700 (N.D.1992). It is well settled that our power to exercise our original jurisdiction extends only to those cases where the questions presented are *publici juris* and affect the sovereignty of the state, the franchises or prerogatives of the state, or the liberties of its people. *State ex rel. Link v. Olson*, 286 N.W.2d 262 (N.D.1979); NDCC 27–02–04. The interest of the state must be primary, not incidental, and the public must have an interest or right that is affected. *State ex rel. Peterson v. Olson*, 307 N.W.2d 528 (N.D.1981). These criteria exist here.

■ This case involves the scheduling of a special election to fill a vacancy in the office of United States Senator. Few matters involve more public interest than the process of electing a new United States Senator. This dispute involves significant questions of interpretations of the statute on calling and conducting a special election for that purpose, as well as the statutes that authorize candidates to have their names placed on the ballot and that make absentee voters ballots available. In other cases involving important questions about the voting process, we have exercised our original jurisdiction. For one example, *see State ex rel. Wefald v. Meier,* 347 N.W.2d 562 (N.D.1984) [referendum process]. This case involves similar special circumstances, presenting questions of an urgent and emergency nature that need a speedy determination. We conclude, therefore, that this is a matter of public interest for our exercise of original jurisdiction.

NDCC 16.1–13–08 directs the legislatively prescribed procedure for filling a vacancy in the office of United States Senator:[1]

> When a vacancy occurs in the office of United States senator from this state, the governor, by appointment, may fill the vacancy temporarily, but any person so appointed shall serve only until the vacancy is filled by election as follows:
>
> 1. If the vacancy occurs during a calendar year in which there is a regularly scheduled statewide election and at least ninety days prior to the general election in that year, the vacancy must be filled at the next statewide election; however, if there is not at least a ninety-day period between the date of the vacancy and the date of the next statewide election, the vacancy must be filled at the general election.

> 2. If the vacancy occurs during a calendar year in which there is not a statewide election regularly scheduled or during a calendar year in which such an election is scheduled but less than ninety days prior to the general election, the governor shall issue a writ of election which must designate a time for holding a special election to fill the vacancy, which election must be held within ninety days of the occurrence of the vacancy.

The Governor's submission to this Court says that this statute "is susceptible to several conflicting interpretations." We agree.

■ In construing statutes, our duty is to ascertain the intent of the Legislature. *County of Stutsman v. State Historical Society,* 371 N.W.2d 321 (N.D.1985). A statute must be construed as a whole to determine the legislative intent, and if possible, the entire statute must be given meaning because the law neither does nor requires idle acts. *Id.*

■ Reading NDCC 16.1–13–08 in its entirety, it specifically directs when a separate special election must be called to fill a Senate vacancy and when a special election must be held in conjunction with a statewide primary or general election.[2] Subsection (2) applies if the Senate vacancy occurs during a calendar year when there is not a regularly scheduled statewide election, or when the vacancy occurs less than ninety days prior to the general election.

■ For subsection (2) to have meaning and not be surplusage, subsection (1) must be construed to apply if the Senate vacancy occurs during a calendar year when there

---

1. The Seventeenth Amendment to the United States Constitution says:

 When vacancies happen in the representation of any State in the Senate, the executive authority of such State shall issue writs of election to fill such vacancies; *Provided,* That the legislature of any State may empower the executive thereof to make temporary appointments until the people fill the vacancies by election as the legislature may direct.

2. A "statewide" election is an election in which all of the electors of the state are entitled to

vote. *Haugland v. Meier,* 339 N.W.2d 100 (N.D. 1983). A primary election is a statewide election that is held on the second Tuesday in June of every general election year. NDCC 16.1–11–01. A general election is a statewide election that is held in each even numbered year on the first Tuesday after the first Monday of November. NDCC 16.1–13–01. The June primary election and the November general election are both regularly scheduled statewide elections.

is a regularly scheduled statewide election and when the vacancy occurs more than ninety days prior to the general election. In that event, there is both a statewide primary and a statewide general election, and if the vacancy occurs more than 90 days before the statewide primary election, it must be filled at the "next statewide election," the primary election; however, if the vacancy occurs less than 90 days before the "next statewide election," the primary election, the vacancy must be filled at the general election. Thus, in adopting NDCC 16.1–13–08, the Legislature has recognized that, when a Senate vacancy occurs less than 90 days before a statewide primary election, there may be insufficient time to properly hold a special election in conjunction with the primary. Under those circumstances, subsection (1) requires that the special election be held at the general election.

In this case, the Senate vacancy occurred less than ninety days before the general election. In this event, the procedure for filling the vacancy is governed by subsection (2) of NDCC 16.1–13–08 that requires the Governor to issue a writ of election and schedule a special election within 90 days of the vacancy. The statute sets a maximum time, but expresses no minimum time that the Governor must comply with. The Governor has scheduled a special election within 90 days of the vacancy, so he has literally complied with NDCC 16.1–13–08.

■■■■ Still, NDCC 16.1–13–08 must be construed in harmony with other related election statutes in order to give meaning and effect to all of the election laws. *Haugland v. Spaeth*, 476 N.W.2d 692 (N.D. 1991). It is an axiom of statutory interpretation that "[w]henever a general provision in a statute is in conflict with a special provision in the same or in another statute, the two must be construed, if possible, so

that effect may be given to both provisions, ..." NDCC 1–02–07. Here, compliance with other mandatory election statutes requires more time before the special election can be held.

NDCC 16.1–12–04(5) directs:

> In the case of special elections called to fill vacancies, certificates of nomination must be filed and in the actual possession of the appropriate officer, regardless of the means of delivery, not later than four p.m. on the sixtieth day prior to the day of election.

Thus, the Legislature has directed that certificates of nomination must be filed sixty days before any special election to fill a vacancy.

■■■■ It is universally held that statutes setting the time for filing a certificate of nomination are mandatory and not directory.[3] *State ex rel. Anderson v. Falley*, 9 N.D. 464, 83 N.W. 913 (1900); *State v. Batchelor*, 15 Wash.2d 149, 130 P.2d 72 (1942); *Koella v. State*, 218 Tenn. 629, 405 S.W.2d 184 (1966); *Vandross v. Ellisor*, 347 F.Supp. 197 (D.S.C.1972); *Johnson v. Herseth*, 246 N.W.2d 102 (S.D.1976); *Jones v. Mather*, 709 S.W.2d 299 (Tex.Ct.App. 1986). See Annot., *Mandatory or Directory Character of Statutory Provision as to Time of Filing Candidates Application or Certification of Nomination before Primary or Election*, 72 ALR 290 (1931); 25 Am.Jur.2d, Elections § 140 (1966); 29 CJS, Elections, § 137 (1965). The sixty-day deadline for filing a certificate of nomination is mandatory and cannot be met by any candidates seeking ballot access for the special election scheduled for November 3.

■■■■ Political parties must give at least six days published notice in official county newspapers before holding their political conventions to nominate candidates for a special election to fill a vacancy.

---

3. In *State ex rel. Englert v. Meier*, 115 N.W.2d 574 (N.D.1962), this Court reiterated that the time limit for filing a certificate of nomination was mandatory. However, under a statute that required the candidate to "present" the petition to the Secretary of State, this Court excused the late receipt of a certificate of nomination where both the Secretary of State and Attorney General had advised the candidate that having the certificate postmarked on the last day for filing complied with the statute. Nevertheless, NDCC 16.1–12–04(5) clearly requires that "certificates of nomination must be filed and in the actual possession of the appropriate officer, regardless of the means of delivery" not later than sixty days prior to the election.

NDCC 16.1–13–14 and 16.1–13–15. Independent candidates may submit certificates of nomination by petition with sufficient signatures of qualified electors. NDCC 16.1–12–02. In this case, the Secretary of State will not be able to certify candidates for a special election on November 3, 1992, only 56 days after the vacancy occurred, unless he ignores the mandatory sixty-day requirement specified in NDCC 16.1–12–04(5) for filing certificates of nomination.

 In addition to the mandatory time requirement for filing a certificate of nomination, the deadline for making absentee voter ballots available cannot be met. The relevant part of NDCC 16.1–07–04 directs:

*When ballots furnished proper officials.* The county auditor, or any other officer required by law to prepare any general, special, or primary state election ballots or any county election ballots, shall prepare, have printed, and deliver to the county auditor at least forty days prior to the holding of any general, special, or primary state election, a suffi-

cient number of absent voter ballots for the use of all voters likely to require such ballots for that election.

According to this legislative mandate, absentee voter ballots for the November 3 general election must be available by September 24, 1992. In this case, that precedes the dates that the political parties have scheduled their conventions to nominate candidates. The legislated time for availability of absentee voter ballots for a special election on November 3 would be substantially foreshortened.

Any reduction in time for filing certificates of nomination and for making absentee ballots available is contrary to the Legislature's historical pattern of enlarging both of those times.[4] That pattern suggests that the Legislature has thought that it is important to lengthen the time for the voters to assess the qualifications of candidates for public office and to analyze the public debate about the positions of those candidates.

4. The original deadline for filing a certificate of nomination with the Secretary of State was not more than 60 days and not less than 30 days before the day fixed by law for the election, but that deadline did not apply to nominations for special elections to fill vacancies caused by death. S.L.1891, ch. 66, § 8. The "not more than 60 days" requirement was deleted in 1895; however, the deadline remained the same. Revised Code 1895, § 503. In 1923 the Legislature amended the deadline for filing certificates of nomination to not less than 40 days before the election and, in the case of special elections to fill vacancies caused by death, not less than 25 days before the special election. S.L.1923, ch. 210, § 1. That deadline remained the same until a special session in 1944 when the Legislature changed it to not less than 70 days before the day fixed for the election; however, the deadline for filing nominations for vacancies caused by death remained at not less than 25 days before the special election. S.L.1944 Special Session, ch. 20, § 1. In 1947 the Legislature changed the 70 day deadline back to not less than 40 days before the election and retained the 25 day deadline for special elections to fill vacancies caused by death. S.L.1947, ch. 171, § 9. The deadline remained the same until 1981 when it was changed to require certificates of nomination for all elections to be filed not less than 55 days prior to the election. S.L. 1981, ch. 241, § 9. In 1987 the law was changed to its current form which requires certificates of nomination to be filed not less than 60 days

prior to the day of the special election. S.L. 1987, ch. 242, § 15.

The absent voters law was originally enacted in this state in 1913 and required ballots for absent voters to be prepared 15 days before any general or primary election. C.L.1913, § 1003. In a 1918 special session, the Legislature amended the deadline for preparation of ballots for absent voters to at least 45 days prior to a general election and 15 days prior to a primary election. S.L.1918 Special Session, ch. 6, § 5. In 1923 the Legislature amended those provisions to provide for the preparation of absentee ballots at least 20 days before a general or primary election. S.L.1923, ch. 202, § 1. That deadline remained the same until a special session in 1944 when the Legislature required the preparation of absentee ballots at least 60 days before a general or primary election. S.L.1944 Special Session, ch. 18, § 1. In 1947 the Legislature changed the deadline back to 20 days before a primary or general election. S.L.1947, ch. 171, § 1. In 1965 the Legislature retained the same deadline, but allowed absent voter ballots for special elections. S.L.1965, ch. 160, § 5. *See State v. Hall,* 74 N.D. 426, 23 N.W.2d 44 (N.D.1946). The 20–day deadline remained the same until 1981 when it was changed to 30 days before a primary, general, or special election. S.L.1981, ch. 241, § 5. In 1987 the Legislature amended the provisions for absent voter ballots to require preparation at least 40 days before the election. S.L.1987, ch. 242, § 5.

The Governor nevertheless asserts that NDCC 16.1–13–08 is a specific, self-contained, and special statute that was enacted separately from the other election laws and that must prevail over other election laws. It is a special statute on the subject of the time for calling a special election to fill a senate vacancy. Other than prescribing the maximum time for the special election to be held, NDCC 16.1–13–08 does not internally prescribe any other deadlines nor set any standards for the special election. The statute is not self-executing to the exclusion of the other election laws. If NDCC 16.1–13–08 were construed to be a special statute to the exclusion of other election laws, there would be no identifiable standards for implementation of the special election. Such a distorted result calls for a construction of NDCC 16.1–13–08 in harmony with the other election laws for an orderly implementation of the special election.

▆ In addition to our familiar rule of statutory construction that we give meaning and effect to related statutes, NDCC 16.1–01–02 declares: "The provisions of this title govern all primary, general, and special statewide and legislative elections, and all other elections, unless otherwise provided by law." The parties have not identified any controlling provision in Title 16.1 that excepts a special election held pursuant to NDCC 16.1–13–08 from the filing requirements of NDCC 16.1–12–04(5) or the absentee ballot provisions of NDCC 16.1–07–04. Although NDCC 16.1–07–03 [5] refers to printing absentee ballots as soon as possible in some situations, that obscure reference does not authorize the Governor or Secretary of State to change the mandatory deadline for filing certificates of nomination. If the Legislature intended to impose different deadlines for this special election, it knew how to do so. For an example, see NDCC 16.1–01–02.2 [specifying procedures for reducing deadlines to be followed in holding a special election on referral of legislation]. The Legislature did not do so. Neither the Governor or the Secretary of State, nor this Court, holds the legislative power to structure shorter times for filing nominations.

The Governor cites the cost of holding a statewide election at near three-quarters of a million dollars, and the historically larger voter turnout for a general election in a presidential election year. "[I]n order to save several hundreds of thousands of dollars in election expenses and to give the greatest number of people possible a voice in the election," the Governor urges this Court to "allow the Governor and the Secretary of State to reduce appropriate time lines, including those necessary for filing, ... proportionately so that this election may be held on November 3, 1992" in conjunction with the general election. These are sensible and powerful policy arguments, but they are ones for the Legislature to consider. Those policies are not presently implemented in the election laws.

▆ Unfortunately, the Governor has set the November 3 special election at a time when no candidates can legally qualify to have their names placed on the ballot and when voters who need to vote by absentee ballot will not have the time mandated by law for doing so. We conclude that NDCC 16.1–13–08, when harmonized with the deadlines mandated by NDCC 16.1–12–04(5) and 16.1–07–04, does not authorize the Governor to set a special election at the same time as the November 3 general election. Rather, the election laws require the Governor to set the special election within ninety days of the vacancy and at a time when there can be compliance with the deadlines mandated in NDCC 16.1–12–04(5)

---

**5.** Part of NDCC 16.1–07–03 says:

*Preparation and printing of ballots.* For all general, primary, or special state elections, for all other special elections held at the same time as a general or primary election, for all county elections, and for all city and school elections, official ballots must be prepared within the time limits provided in section 16.1–07–04. In the case of special elections wherein the election is called less than forty or twenty days, as the case may be, before the election day, or where certification of candidates does not take place before the forty-day or twenty-day limitations, the ballots for the use of absentee voters must be made available as soon as possible.

\* \* \* \* \* \*

for filing nominations and in 16.1–07–04 for availability of absentee ballots.

Fortunately, the outer limit of the ninety day period for holding a special election to fill a United States Senate vacancy still affords sufficient time for independent candidates and both political parties to file certificates of nomination for a timely called special election. Even while respecting the scheduled dates of the political conventions, the Governor still has time to call a special election for December 4, 5, 6, or 7 that will allow sufficient time for candidates to comply with NDCC 16.1–12–04(5) in filing their certificates of nomination.

Accordingly, we enjoin the Governor from calling a special election at the same time as the November 3 general election, and we direct the Governor to call a special election in compliance with the time constraints and deadlines imposed by NDCC 16.1–13–08, 16.1–12–04(5), and 16.1–07–04.

ERICKSTAD, C.J., VANDE WALLE, J., and WILLIAM F. HODNEY, District Judge and VERNON R. PEDERSON, Surrogate Judge, concur.

VERNON R. PEDERSON, Surrogate Judge and WILLIAM F. HODNY, D.J., sitting in place of LEVINE, J., and JOHNSON, J., disqualified.

VERNON R. PEDERSON, Surrogate Judge, specially concurring.

In the light of the posture of this application for the exercise of original jurisdiction, I can concur in the disposition reached in the opinion authored by Justice Meschke. The election laws which appear to control the exercise of executive powers, in this case, are indeed ambiguous. There is no opportunity to now ask the legislative assembly to clarify its intention. This court should, and has, arrived at a reasonable solution to the matter of the selection this year of a successor to the late Senator Quentin Burdick, as requested by the Secretary of State and concurred in by the Governor.

My reluctance relates to the erection and attacking of straw men, to illustrate the problems perceived in the solutions formu-

lated by the Governor. Furthermore, I have never experienced a state wide write-in election, and am not prepared to call that an absurdity. It was conceded that it would not be illegal.

Although constitutional and legislative changes subsequent to the decision in *State ex rel. Andrews v. Quam*, 72 N.D. 344, 7 N.W.2d 738 (1943) may explain our failure to rely on that precedent, it is possible that, in an appropriate case, it may be necessary to confront an argument that claims both legislative and judicial infringement of executive powers.