Emma WAGNER, Appellant,

v.

SHERIDAN COUNTY SOCIAL SERVICES BOARD and North Dakota Department of Human Services, Appellees.

Civ. No. 940002.

Supreme Court of North Dakota.

June 28, 1994.

Richard R. LeMay, Minot, for appellant.

Jean R. Mullen, Asst. Atty. Gen., Atty. General's Office, Bismarck, for appellees.

VANDE WALLE, Chief Justice.

Emma Wagner appealed from a district court judgment affirming the decision of the North Dakota Department of Human Services (the Department) denying her application for medical assistance (medicaid) benefits. We affirm.

Following her husband's death in 1983, Emma owned two certificates of deposit, together valued at $15,500. Later, the name of her son, Norman Wagner, was added to the certificates of deposit. In 1989, Emma and Norman "pledge[d], assign[ed], set over and transfer[red]" the certificates of deposit to the First State Bank of Goodrich (the bank), as security for a debt Norman owed the bank.[1] Emma continued to receive interest income from the certificates, while Norman continued to pay all interest accruing on the debt. It was the mutual intention of Norman and Emma that he fully pay the money owed the bank and that he not apply the certificates of deposit to the debt.

In the fall of 1992, Emma was admitted to the Turtle Lake Hospital. On October 4, 1992, she was transferred to a swing bed facility. On October 6, 1992, although no default on the loan had been declared, the two certificates of deposit were applied to the unpaid balance of Norman's debt with the bank. It appears that Norman, under a power of attorney, consented on behalf of both himself and Emma to the certificates of deposit being applied to the debt.

On October 21, 1992, Norman, on behalf of Emma, applied for medicaid benefits. The Sheridan (N.D.) County Social Service Board denied the application because it believed that using the certificates of deposit to satisfy Norman's debt constituted a transfer of assets that, under section 50–24.1–02, NDCC, temporarily disqualified her from receiving medicaid benefits. That section provides,

"50–24.1–02. Eligibility. Within the limits of legislative appropriations, medical assistance may be paid for any person who either has income and resources insufficient to meet the costs of necessary medical care and services or is eligible for or receiving financial assistance under chapter 50–09 or title XVI of the Social Security Act, as amended, and:

1. Has not at any time before or after making application for medical assistance made an assignment or transfer of property for the purpose of rendering himself eligible for assistance under this chapter. For the purposes of making any determination or redetermination of eligibility, the phrase 'assignment or transfer' includes, but is not limited to, actions or failures to act which effect a renunciation or disclaimer of any interest which the applicant or recipient might otherwise assert or have asserted, or which serve to reduce the amounts which an applicant or recipient might otherwise claim from a decedent's estate, a trust or similar device, or a person obligated by law to furnish support to the applicant or recipient."

The Board determined that, had the certificates of deposit not been applied to Nor-

---

1. The record does not reflect the amount of the debt. At oral argument, counsel for Emma stated that the amount of the debt was approximately $14,000.

man's debt in 1992, the $15,500 would have covered Emma's expenses for a period of seven months and five days. The Board concluded Emma constructively rendered herself destitute by applying the certificates of deposit to the debt, for the purpose of becoming eligible for medicaid.

Emma requested and received a hearing with the Department regarding her application. On December 1, 1992, prior to the administrative hearing, Emma was transferred to a basic care facility, where she continues to reside. On that date, Emma was found eligible for medicaid benefits. Thus, the only issue at the hearing was whether Emma was eligible for medicaid benefits while she was in the swing bed facility, from October 4, 1992, to November 30, 1992.

The hearing officer for the Department recommended that the Department establish written standards "operationalizing the provisions of the North Dakota Administrative Code pertaining to the process for determining 'disqualifying transfers' of assets which includes, among other things, methods and directions for assessing when a pledged asset may be deemed to have been disposed of or transferred." The hearing officer further recommended that, following promulgation of such standards, Emma's application be remanded to the Sheridan County Social Service Board for reconsideration.

The Executive Director of the Department rejected the hearing officer's recommendation and affirmed the Sheridan County Social Service Board's original decision to deny Emma benefits from October 6, 1992 to November 30, 1992. The Executive Director noted that, although the certificates of deposit had purportedly been "assigned" to the

bank in 1989, the "assignment" was, in fact, a pledge, because the bank had no right to apply the certificates of deposit to the debt unless a default were to have occurred.

Emphasizing that no default had been declared, the Executive Director concluded that a "transfer" took place on October 6, 1992, when the certificates of deposit were applied to Norman's debt.[2] Due to the timing of the transfer, and because the transfer was for less than adequate consideration, the Executive Director applied the Department's presumption under section 75–02–02.1–33, NDAC, that the purpose of the transfer was to qualify for medicaid. The Executive Director thus determined that Emma was temporarily disqualified from receiving benefits.

Emma appealed the decision to district court, which affirmed. The district court noted that, when personal property is pledged, legal title remains with the pledgor. *See* 68A Am.Jur.2d *Secured Transactions* § 109 (1993). Thus, the court reasoned, legal title to the certificates of deposit remained in Emma and did not pass to the bank until October 6, 1992. The district court concluded that a disqualifying transfer therefore took place on that date.

On appeal to this court, Emma contends that, within the meaning of section 50–24.1–02, NDCC, she "assigned or transferred" the certificates of deposit in 1989, not 1992. Emma asserts that, once pledged, the certificates of deposit were not available to her to pay her medical expenses.[3] Under the Department's own rules and definitions, Emma argues, she could not have made a disqualifying transfer after the 1989 pledge.

Alternatively, Emma asserts, even if applying the certificates of deposit to Norman's debt on October 6, 1992, is a "transfer", she

---

2. The fact that a default had not been declared may be more relevant in determining Emma's intent, i.e., whether the reason the certificates were applied to the debt was to render Emma eligible for medicaid, than to whether there was a "transfer".

3. Under section 75–02–02.1–25, NDAC,
 "1. All assets must be considered in establishing eligibility for medicaid.
 2. Only such assets as are actually available will be considered. Assets are actually available when at the disposal of an applicant,

recipient, or responsible relative; when the applicant, recipient, or responsible relative has a legal interest in a liquidated sum and has the legal ability to make the sum available for support, maintenance, or medical care; or when the applicant, recipient, or responsible relative has the lawful power to make the asset available, or to cause the asset to be made available. Assets will be reasonably evaluated. A determination that an asset is deemed available is a determination that the asset is actually available...."

presented sufficient evidence to rebut the presumption that the transfer was made for purposes of rendering herself eligible for medicaid.

 Chapter 28–32, NDCC, governs our review of administrative agency decisions. Under this chapter, although the analysis of the district court is entitled to respect, our review concerns the findings and decision of the agency and not those of the district court. *S.N.S. v. Dept. of Human Services*, 499 N.W.2d 891 (N.D.1993); *Hakanson v. Dept. of Human Services*, 479 N.W.2d 809 (N.D. 1992); *Haugland v. Spaeth*, 476 N.W.2d 692 (N.D.1991). In this instance, we review the decision of the Executive Director of the Department, since it is from that decision that Emma appealed to the district court. *Hakanson, supra; Speedway, Inc. v. Job Service*, 454 N.W.2d 526 (N.D.1990). Essentially, we will affirm the decision if the findings of fact are supported by a preponderance of the evidence, the conclusions of law are supported by the findings of fact, the decision is supported by the conclusions of law, and the decision is in accordance with the law. NDCC §§ 28–32–21, 28–32–19; *City of Bismarck v. Santineau*, 509 N.W.2d 56 (N.D.1993). "[W]e do not make independent findings of fact or substitute our judgment for that of the agency, but determine only whether a reasoning mind could have reasonably determined that the factual conclusions were supported by the weight of the evidence." *Bohac v. Graham*, 424 N.W.2d 144 (N.D.1988).

 A "pledge" is defined as "a deposit of personal property as security for the performance of another act." NDCC § 35–06–01. By depositing the certificates of deposit as security for Norman's debt, Emma pledged her individual interest in the certificates.[4] When property is pledged to secure the debt of another person, the person pledging the property "cannot withdraw the prop-

erty pledged otherwise than as a pledgor for himself might...." NDCC § 35–06–06. The creation of such a security interest, however, does not affect legal title to the pledged property. NDCC § 35–01–08. We conclude that, from 1989 until October 6, 1992, Emma retained a legal interest in the certificates of deposit, subject to the bank's security interest.

 Having pledged her interest in the certificates of deposit to secure Norman's debt, Emma was a surety for Norman's obligation to the bank. NDCC § 22–03–01; *First Interstate Bank v. Rebarchek*, 511 N.W.2d 235 (N.D.1994). Emma thus had the legal right to compel Norman's performance to pay the debt when the debt came due, NDCC § 22–03–09, and to be reimbursed by Norman when her interest in the certificates of deposit were used to satisfy the debt. NDCC § 22–03–10.

 The interpretation of a statute, here, section 50–24.1–02, NDCC, is a question of law, fully reviewable on appeal. *Mehlhoff v. Newburg School Dist. 54*, 512 N.W.2d 432 (N.D.1994). We afford some deference to an administrative agency's construction of a statute that it is charged with executing, if the construction does not contradict the clear and unambiguous language of the statute. *NL Industries v. State Tax Com'r*, 498 N.W.2d 141 (N.D.1993); *Haugland v. Spaeth, supra*. Here, the Department's construction of section 50–24.1–02, NDCC, is reasonable and does not contradict the clear and unambiguous language of the statute. Emma held legal title to the pledged certificates and had the legal authority to require Norman himself to satisfy the debt; the Department properly determined Emma to have a "resource" within the meaning of section 50–24.1–02, NDCC. Title to the certificates of deposit did not pass until they were applied to the debt; the Depart-

4. When property is held in joint tenancy, each tenant has an equal right to share in the enjoyment of the whole of the property, for his or her life. 48A C.J.S. *Joint Tenancy* § 2 (1981). However, there is a statutory presumption that "an account belongs to the parties in proportion to the net contribution of each to the sums on deposit...." NDCC § 30.1–31–08(2); *see Con-* *servatorship of Milbrath*, 508 N.W.2d 360 (N.D. 1993). The Department determined that Emma was the sole contributor to the account and that Emma had not rebutted the presumption of ownership. We do not reweigh the evidence on appeal. *Bohac v. Graham*, 424 N.W.2d 144 (N.D.1988).

ment properly determined an "assignment or transfer" to have taken place at that time.

The burden of establishing eligibility for medicaid benefits rests with the person applying for the benefits. NDAC § 75–02–02.1–02.1. The Department determined Emma did not establish that the value of her interest in the pledged certificates of deposit was an amount less than $15,500. Our standard of review, recognizing the constitutional doctrine of separation of powers, does not allow us to make independent findings of fact or to substitute our judgment for that of the Department. *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214 (N.D.1979). A lien on property may reduce the value of the property. However, Emma had the burden of presenting reliable information as to the value of her assets. NDAC § 75–02–02.1–32.

The Department concluded that Emma also failed to rebut the presumption that the October 6, 1992, transfer was made for purposes of rendering Emma eligible for medicaid benefits. *See* NDAC § 75–02–02.1–33. This matter may be complicated by the fact that Norman, under a power of attorney, apparently made the transfer for his own benefit. Nevertheless, the record supports the Department's conclusion that the transfer was made for the purpose of qualifying for medicaid. *See id.* We conclude that the Department could reasonably have found Emma ineligible for medicaid benefits for the term of October 4, 1992, to November 30, 1992.

The judgment of the district court, affirming the Department's decision, is affirmed.

SANDSTROM, NEUMANN, LEVINE and MESCHKE, JJ., concur.